**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
E-mail: dalekgalipo@yahoo.com
Hang D. Le (SBN 293450)
E-mail: hlee@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333; Fax: (818) 347-4118

**LAW OFFICES OF PANOS LAGOS**
**Panos Lagos (SBN 61821)**
6569 Glen Oaks Way
Oakland, CA 94611
510.530.4078
510.530.4725 (FAX)
E-mail: panos@panoslagoslaw.com

**LAW OFFICE OF SANJAY S. SCHMIDT**
**Sanjay S. Schmidt (SBN 247475)**
1388 Sutter Street, Suite 810
San Francisco, CA 94109
Tel. (415) 563-8583
Fax (415) 223-9717
Email: ss@sanjayschmidtlaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

J.A.J., a minor through his mother and Next Friend CRYSTAL BOTELLO, individually and as successor in interest to SANTANA JUAREZ GONZALEZ, Deceased; SANTANA JUAREZ JIMENEZ, individually; and TERESA GONZALEZ-VELAZQUEZ, individually;

Plaintiffs,

v.

State of California Highway Patrol Officer EFRAIN JIMENEZ (ID#18075), individually; A.J, a minor, through her mother and Next Friend, SELENE RAMOS, individually and as successor in interest for SANTANA JUAREZ GONZALEZ, Deceased; and DOES 1 to 100, jointly and severally;

Defendants.

Case No. 1:18-cv-01138-KES-EGC

**JOINT PRETRIAL STATEMENT**

FPTC Date: August 31, 2026
Time: 8:30 a.m.
Crtrm: 6

Trial Date: November 10, 2026

**TABLE OF CONTENTS**

NEUTRAL JOINT STATEMENT OF THE CASE ........ 1
JURISDICTION AND VENUE ........ 1
JURY TRIAL 2
UNDISPUTED FACTS ........ 2
DISPUTED FACTUAL ISSUES ........ 2
DISPUTED EVIDENTIARY ISSUES ........ 4
SPECIAL FACTUAL INFORMATION ........ 5
(Tort Action for Personal Injury/Wrongful Death) ........ 5
RELIEF SOUGHT ........ 6
POINTS OF LAW ........ 6
ABANDONED AND PREVIOUSLY DECIDED ISSUES ........ 17
WITNESS LISTS ........ 17
EXHIBIT LISTS ........ 17
DISCOVERY DOCUMENTS TO BE OFFERED AT TRIAL ........ 17
FURTHER DISCOVERY OR MOTIONS ........ 17
STIPULATIONS ........ 18
AMENDMENTS – DISMISSALS ........ 18
SETTLEMENT NEGOTIATIONS ........ 18
AGREED STATEMENTS ........ 18
SEPARATE TRIAL OF ISSUES ........ 18
IMPARTIAL EXPERTS – LIMITATIONS OF EXPERTS ........ 19
ATTORNEYS' FEES ........ 19
SPECIAL HANDLING OF TRIAL EXHIBITS ........ 19
TRIAL PROTECTIVE ORDER ........ 19
MISCELLANEOUS ........ 19

**TO THE HONORABLE COURT ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiff J.A.J.,[1] through his mother and Next Friend CRYSTAL BOTELLO, individually and as successor in interest to SANTANA JUAREZ GONZALEZ, Deceased, by and through his counsel of record, and Defendant Efrain Jimenez, by and through his counsel of record, hereby respectfully submit the following Joint Pretrial Statement, pursuant to Rule 16 of the Federal Rules of Civil Procedure, Local Rule 281, and the Standing Order of this Court.

## NEUTRAL JOINT STATEMENT OF THE CASE

The parties agree that the following neutral statement of the case be read to the jury:

This case arises out of the fatal officer-involved shooting of Santana Juarez Gonzalez by California Highway Patrol (CHP) Officer Efrain Jimenez during a police pursuit.

The Plaintiff in this case is Joshua Juarez, the now-adult son of Decedent Santana Juarez Gonzalez. The Defendant is CHP Officer Efrain Jimenez Plaintiff contends that Defendant Officer Jimenez used excessive and unreasonable force against Decedent, causing his death. Plaintiff also contends that Defendant Jimenez was negligent in his tactical conduct and decisions and his use of force and acted in reckless disregard of Decedent's constitutional right to be free from an unreasonable seizure and excessive force. Plaintiff is seeking damages as permitted by law.

Defendant Jimenez denies Plaintiff's allegations and asserts that his actions were reasonable under the totality of the circumstances because Decedent presented an imminent threat of death or serious bodily injury to the officer and others.

## JURISDICTION AND VENUE

Plaintiff and Defendant Jimenez agree that this Court has jurisdiction over Plaintiff's 42 U.S.C. §1983 federal claim under 28 U.S.C. §§1331 and 1343 and supplemental jurisdiction over

---

[1] Plaintiff J.A.J. was a minor at the time of the commencement of this action. Plaintiff is no longer a minor and thus will be referred to by his full name, Joshua Juarez, in this Joint Pretrial Statement. The parties request that the Court add the Plaintiff's full name and remove the guardian so the caption reads: "JOSHUA A. JUAREZ, individually and as successor in interest to SANTANA JUAREZ GONZALEZ, Deceased."

Plaintiff's state law causes of action under 28 U.S.C. §1367. Venue is proper in the Eastern District of California under 28 U.S.C. §1391 because all relevant events in this action occurred within Madera County, California.

**JURY TRIAL**

Plaintiff and Defendant Jimenez have both made timely demands for trial by jury. (ECF Nos. 1, 14.) Plaintiff and Defendant Jimenez estimate that trial will take between four to six (4-6) court days.

**UNDISPUTED FACTS**

Plaintiff and Defendant Jimenez agree that the following facts are undisputed:

a) The incident occurred on August 20, 2017.

b) Officer Jimenez was assigned to patrol the southeast area of Madera County on August 20.

c) At all relevant times during the incident, Officer Jimenez was acting within the course and scope of his employment as a CHP officer.

d) At all relevant times during the incident, Officer Jimenez was acting under color of law.

e) Officer Jimenez discharged his firearm twice at Decedent.

f) Decedent was struck twice in the back.

g) Decedent died at the scene as a result of his gunshot wounds.

h) A gun was not found on Decedent's person after he was shot.

**DISPUTED FACTUAL ISSUES**

a) Whether Officer Jimenez provided a verbal warning to Decedent that he was going to use deadly force prior to shooting Decedent;

b) Whether Decedent was running or walking or stumbling or staggering in the direction of the Red Barn immediately prior to Officer Jimenez firing the first shot;

c) Whether Decedent made any threatening or rapid/furtive movement immediately prior to the first shot, such that Officer Jimenez reasonably believed that he was in danger of being shot;

d) Whether Defendant Jimenez had less-lethal force alternatives or options when he fired his first shot;

e) Whether Defendant Jimenez had less-lethal force alternatives or options when he fired his second shot;

f) The amount of time that elapsed between Officer Jimenez's first shot and second shot;

g) Whether Officer Jimenez issued any commands to Decedent between his first shot and second shot;

h) Whether Decedent posed an immediate threat of death or serious bodily injury to Officer Jimenez and/or the patrons at the Red Barn at the time of the shooting;

i) Whether Officer Jimenez's conduct and tactics prior to the use of lethal force against Decedent were appropriate and reasonable;

j) Whether Officer Jimenez's use of deadly force was objectively reasonable under the totality of the circumstances;

k) Whether Officer Jimenez acted negligently in using deadly force against Decedent, including any pre-shooting tactical negligence;

l) Whether Officer Jimenez acted in reckless disregard of Decedent's right to be free from excessive force when he shot Decedent;

m) Whether Officer Jimenez reasonably believed that Decedent had a gun in his possession at the time of the shooting;

n) Whether Decedent was a fleeing person for a felony that threatened or resulted in death or serious bodily injury and Officer Jimenez reasonably believed that the Decedent would cause death or serious bodily injury to another unless immediately apprehended;.

o) Whether Officer Jimenez reasonably believed, based on the totality of the circumstances, that deadly force was necessary to defend against an imminent threat of death or serious bodily injury to the officer or to another person or to apprehend a fleeing person for a felony that threatened or resulted in death or serious bodily injury; and

p) Whether Officer Jimenez reasonably believed the Decedent was going to harm him or other persons and officer Jimenez only used the amount of force that was reasonably necessary to protect himself or other persons.

## DISPUTED EVIDENTIARY ISSUES

**Plaintiff's Statement**:

Plaintiff intends to bring motions *in limine*, submit trial briefs, and/or seek the Court's direction and assistance on the following issues:

a) Exclude evidence or references to Decedent's criminal history that was unknown to the officers at the time of the incident;

b) Exclude evidence or references to Decedent's alleged gang affiliations that were unknown to the officers at the time of the incident;

c) Exclude evidence or references to Decedent's history with drugs and alcohol and the results of the toxicology test acquired at the time of autopsy;

d) Exclude testimony or reference to certain opinions by Defendant Jimenez's police practices expert Clarence Chapman;

e) Exclude evidence or references to findings by the State of California that Officer Jimenez's use of force was not criminal, was reasonable, was justified, and/or was within policy.

f) Exclude cumulative/duplicative testimony by Defendants' non-retained experts regarding police practices, training, and policies;

g) Exclude testimony or argument that its permissible for officers to shoot a subject for fleeing;

h) Possible bifurcation of trial into two phases: (1) liability and predicate question to punitive damages, and (2) damages, depending on the Court's ruling on Plaintiff's motions *in limine* to exclude certain evidence.

**Defendant Jimenez's Statement**:

Defendant Jimenez intends to file motions *in limine*, trial briefs, or seek the Court's guidance on the following issues:

1. Exclude and preclude lay witnesses from testifying about Decedent's state of mind, mental state, and other opinions offered to explain Decedent's conduct.
2. Exclude or limit portions of Plaintiff's police-practices expert Roger Clark's opinions and testimony.
3. Exclude or limit the testimony and opinions of Plaintiff's non-retained video expert

Paul Kealoha-Blake and any documents/photographs he prepared.

4. Exclude or limit photographs of Decedent's autopsy and the crime scene.

5. Exclude the photographs taken by Plaintiff's attorney Panos Lagos.

6. Exclude and preclude any witness from testifying about the authenticity or accuracy of the CHP AirOps video footage.

7. Limit the testimony of pathologist Dr. Mark Super.

8. Exclude any witness, document, or information not disclosed, identified, or produced in discovery.

9. Permit Defendant to introduce evidence of Decedent's criminal history, gang affiliation, and drug/alcohol use for purposes of wrongful death damages and to rebut the anticipated testimony of Decedent's parents and family members.

10. Bifurcate trial on the amount of punitive damages in the event the jury makes the requisite finding during the liability stage.

## SPECIAL FACTUAL INFORMATION

## (Tort Action for Personal Injury/Wrongful Death)

**a) Nature of the Incident**

This case arises out of the fatal shooting of Decedent Santana Juarez Gonzalez by California Highway Patrol Officer Efrain Jimenez. The primary issues to be evaluated by the trier of fact are the "objective reasonableness" of Officer Jimenez's use of deadly force against Decedent, whether Officer Jimenez was negligent in his tactical conduct and decisions leading up to his use of deadly force and in his use of deadly force, Decedent's negligence if any, whether Jimenez acted with a reckless disregard for the Decedent's rights, and whether punitive damages are warranted and, if so, the extent thereof.

**b) Plaintiff's Age and Damages**

Plaintiff Joshua Juarez is 20 years old. Joshua Juarez brings claims individually and as Decedent's successor in interest and seeks survival damages, including pain and suffering and loss of life, on behalf of Decedent and noneconomic wrongful death damages.

**c) Dependents, Decedent's Contributions, Decedent's Physical Condition, and Decedent's Education and Training**

Plaintiff does not seek damages for loss of financial contribution, nor does Plaintiff seek damages for any loss of earning or earning capacity on behalf of Decedent. According to the autopsy conduct on Decedent, Decedent was in relatively good physical health at the time of his death.

## RELIEF SOUGHT

**Plaintiffs' Statement**:

Plaintiff seeks survival damages for loss of life, loss of enjoyment of life and pre-death pain and suffering, pursuant to his section 1983 claim for excessive force in violation of the Fourth Amendment to the U.S. Constitution, and seeks survival damages pursuant to his claim for excessive force in violation of the Bane Act. Further, Plaintiff seeks wrongful death damages for the loss of Decedent's love, companionship, affection, guidance, society, and support, pursuant to his state law claims for battery and negligence. Plaintiff seeks punitive damages, pursuant to his federal excessive force claim and his state law claims for battery and violation of the Bane Act. Plaintiff seeks attorneys' fees under state and federal law. Plaintiff also seeks to recover the costs of suit.

**Defendant Jimenez's Statement:**

Defendant seeks judgment in his favor, costs, and, if applicable, attorney's fees.

## POINTS OF LAW

**Plaintiff's Points of Law:**

**Claim 1**: **Excessive Force (Survival Claim, Fourth Amendment).**

Officer Jimenez used excessive force against Decedent in violation of his Fourth Amendment rights and 42 U.S.C. § 1983. At the time of the use of force, Mr. Juarez posed no immediate threat to anyone.

Plaintiff seeks survival damages, punitive damages, and reasonable attorneys' fees under this claim.

Elements:

1. Officer Jimenez acted under color of law;
2. Officer Jimenez used excessive force against Decedent;

3. The excessive force was a cause of Decedent's injury or death.

*See* Ninth Circuit Manual of Model Jury Instructions, No. 9.27.

**Claim 2: Violation of the Bane Act (Cal. Civ. Code § 52.1).**

Plaintiff contends that Officer Jimenez, while acting in the course and scope of his employment as a California Highway Patrol police officer, violated the Bane Act, CAL. CIV. CODE § 52.1. Section 52.1 does not require a showing of "threats, intimidation and coercion" separate from an underlying constitutional violation. *See Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1042 (9thCir. 2018); *see also Cornell v. City and County of San Francisco* 225 Cal.Rptr.3d at 382-83 (2017) (holding that "[n]othing in the text of the statute requires that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged" and "that the use of excessive force can be enough to satisfy the 'threat, intimidation or coercion' element of Section 52.1."). Further, although the Bane Act requires "a specific intent to violate the arrestee's right to freedom from unreasonable seizure[,]" *Reese*, 888 F.3d at 1045. "it is not necessary for the defendant[] to have been 'thinking in constitutional or *legal terms* at the time of the incident[], because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.'" *Id.* (citation omitted) (italics in original); *Shoar v. Cnty. of Santa Clara*, No. C 22-00799 WHA, 2022 WL 10177673, at *2 (N.D. Cal October 17, 2022) ("A plaintiff can satisfy the specific intent requirement of the Bane Act by showing defendant acted with reckless disregard of the right at issue").

Plaintiff seeks survival damages, treble damages, punitive damages and reasonable attorneys' fees under this claim.

Elements:

1. Officer Jimenez used excessive force against Decedent;

2. Officer Jimenez, in using excessive force, acted with a reckless disregard for Decedent's constitutional rights;

3. Decedent was harmed; and

4. Officer Jimenez's use of excessive force was a substantial factor in causing Decedent's harm.

*See* CACI 3066.

**<u>Claim 3:</u> <u>Negligence (Wrongful Death Claim, State Law)</u>.**

Plaintiff contends that Officer Jimenez, while acting in the course and scope of his employment as a CHP police officer, was negligent in his tactical conduct and decisions before using force on Decedent and used unreasonable force on Decedent. *See Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 635-8 (Cal. 2013).

Plaintiff seeks wrongful death damages under this claim, including the loss of Decedent's love, companionship, comfort, care, assistance, protection, affection, society, moral support and financial support. *See* CACI 3921.

<u>Elements</u>:

1. Officer Jimenez used deadly force against Decedent;
2. Officer Jimenez's use of deadly force was not necessary to defend human life;
3. Decedent was harmed/killed; and
4. Officer Jimenez's use of deadly force was a substantial factor in causing Decedent's harm/death.

*See* CACI 441.

**<u>Claim 4:</u> <u>Assault and Battery (Wrongful Death Claim, State Law)</u>.**

Officer Jimenez used unreasonable force against Decedent even though Decedent posed no immediate threat of death or serious bodily injury.

Plaintiff seeks wrongful death damages under this claim, including the loss of decedent's love, companionship, comfort, care, assistance, protection, affection, society, and moral support. *See* CACI 3921.

<u>Elements</u>:

1\. Officer Jimenez used deadly force on Decedent;
2\. Officer Jimenez's use of deadly force was not necessary to defend human life;
3\. Decedent was harmed/killed; and
2\. Officer Jimenez's use of deadly force was a substantial factor in causing Decedent's harm/death.

*See* CACI 1305B.

**Defendants' Points of Law**

A. The elements for a 42 U.S.C. § 1983 excessive-force claim arising under the Fourth Amendment are:

1. The officer acted under color of state law;

2. The officer deprived the Decedent of his constitutional right to be free of excessive force;

3. The use of force was objectively unreasonable under all of the circumstances;

4. The use of force caused the Decedent harm; and

5. Plaintiff is the successor-in-interest to the Decedent.

Ninth Circuit Model Civil Jury Instrs. 9.3, 9.27; *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Tatum v. Cty. & Cnty. of S.F.*, 441 F.3d 1090, 1100 n.2 (9th Cir. 2006) ("[T]he decedent's 'successor in interest' may prosecute [a section 1983] survival action if the person … satisfies the requirements of California law.").

In determining whether the officer used excessive force, all of the circumstances known to the officer on the scene must be considered, including:

1. the nature of the crime or other circumstances known to the officer at the time force was applied;

2. whether Decedent posed an immediate threat to the safety of the officer or others;

3. whether Decedent was actively resisting arrest or attempting to evade arrest by flight;

4. the amount of time the officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

5. the relationship between the need for the use of force and the amount of force used;

6. any effort made by the officer to temper or to limit the amount of force;

7. the severity of the security problem at issue;

8. the availability of alternative methods to subdue the Decedent;

9. the number of lives at risk and the parties' relative culpability, i.e., which party created the dangerous condition situation and which party is more innocent;

10. whether it was practical for the officer to give a warning of the imminent use of force, and whether such warning was given;

11. whether a reasonable officer would have or should have accurately perceived a mistaken fact; and

12. whether there was probable cause for a reasonable officer to believe that the suspect had committed a crime involving the infliction or threatened infliction of serious physical harm.

Ninth Circuit Model Civil Jury Inst. 9.27 (modified).

In general, all claims of excessive force, whether deadly or not, should be analyzed under the objective reasonableness standard of the Fourth Amendment as applied in *Scott v. Harris*, 550 U.S. 372, 381-85 (2007), *Graham*, 490 U.S. at 397, *Tennessee v. Garner*, 471 U.S. 1, 7-12 (1985), and *Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019).

In assessing reasonableness, the fact-finder should give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. (citation omitted). In addition, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id*. at 396-97.

The Ninth Circuit has repeatedly emphasized that the most important factor is "whether the suspect posed an immediate threat to the safety of the officers or others." *S.B. v. Cty. of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017) (internal quotation marks omitted); *Orn v. Cty. of Tacoma*, 949 F.3d 1167 (9th Cir. 2020); *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019). It is well-established that where a suspect threatens an officer with a weapon or where the officer has probable cause to believe that the suspect poses a threat of death or serious physical harm to the officer or others, the officer is justified in using deadly force. *Tennessee v. Garner*,

471 U.S. at 11; *Wilkinson v. Torres*, 610 F.3d 546, 546 (9th Cir. 2010).

B. The elements of a claim for battery by a peace officer under California law are:

A peace officer may use deadly force only when necessary in defense of human life. Plaintiff claims that Officer Jimenez unnecessarily used deadly force on Decedent. To establish this claim, Plaintiff must prove all of the following:

1. That the officer intentionally touched Decedent or caused Decedent to be touched;
2. That the officer used deadly force on Decedent;
3. That the officer's use of deadly force was not necessary to defend human life;
4. That Decedent was killed;
5. That the officer's use of deadly force was a substantial factor in causing Decedent's death; and
6. That Plaintiff is the successor-in-interest to Decedent.

Officer Jimenez's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by the officer at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily harm to the officer or to another person, or to apprehend a fleeing person for a felony, when all of the following conditions are present:

1. the felony threatened or resulted in death or serious bodily injury to another;
2. Officer Jimenez reasonably believed that the person fleeing would cause death or serious bodily injury to another unless immediately apprehended; and
3. If practical under the circumstances, Officer Jimenez made reasonable efforts to identity himself as a peace officer and to warn that deadly force would be used unless the officer had objectively reasonable grounds to believe the person is aware of those facts.

A person being arrested/detained has a duty not to use force to resist the peace officer unless the peace officer is using unreasonable force.

"Deadly force" means any use of force that creates a substantial risk of causing death or serious bodily injury, including, but not limited to, the discharge of a firearm.

A threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to the peace officer at the time, including the conduct of the officer and Decedent leading up to the use of deadly force. In determining whether the officer's use of deadly force was necessary in defense of human life, the jury must consider the officer's tactical conduct and decisions before using deadly force on the Decedent and whether the officer used other available resources and techniques as an alternative to deadly force, if it was reasonably safe and feasible to do so.

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other de-escalation tactics are not retreat. A peace officer does not lose the right to self-defense by use of objectively reasonable force to effect the arrest or to prevent escape or to overcome resistance. A peace officer does, however, have a duty to use reasonable tactical repositioning or other de-escalation tactics.

CACI 1305B.

The same *Graham* factors apply to the reasonableness of the use of force as under a Fourth Amendment claim. *Hernandez v. Cty. of Pomona*, 46 Cal. 4th. 501, 514 (2009). As with Fourth Amendment claims, a claim for battery is a personal right that may not be vicariously asserted. Cal. Civ. Proc. Code § 377.32. While the Plaintiff may step into the Decedent's shoes to prosecute this claim on his behalf, the Plaintiff has no standing to do so for themselves because Officer Jimenez did not commit a battery against Plaintiff. Indeed, it has been established that "wrongful death" damages compensate a Plaintiff for his own independent pecuniary injury suffered by loss of the Decedent, and are separate and distinct from any damages recoverable by the Decedent had he survived. Cal. Civ. Proc. Code §§ 377.22, 377.60; *Earley v. Pacific Elec. Ry.*

*Co.*, 176 Cal. 79, 81 (1917); *Justus v. Atchison*, 19 Cal. 3d 564, 572, 573 (1977).

C. The elements for a negligence claim against a peace officer for use of deadly force are:

1. That Defendant was a peace officer;
2. Officer Jimenez used deadly force on the Decedent;
3. Officer Jimenez's use of deadly force was not necessary to defend human life;
4. The Decedent was killed; and
5. Officer Jimenez's use of deadly force was a substantial factor in causing the Decedent's death.

Officer Jimenez's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by the officer at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily injury to the officer or another person; or to apprehend a fleeing person for a felony, when all of the following conditions are present:

1. the felony threatened or resulted in death or serious bodily injury to another;
2. Officer Jimenez reasonably believed that the person fleeing would cause death or serious bodily injury to another unless immediately apprehended; and
3. Officer Jimenez made reasonable efforts to identity himself as a peace officer and to warn that deadly force would be used, unless the officer had objectively reasonable grounds to believe the person is aware of those facts.

A person being arrested/detained has a duty not to use force to resist a peace officer unless the peace officer is using unreasonable force.

A threat of death or serious bodily injury is "imminent" if, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or to another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one

that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to or perceived by the peace officer at the time, including the conduct of Officer Jimenez and the Decedent leading up to the use of deadly force. In determining whether the officer's use of deadly force was necessary in defense of human life, you must consider the officer's tactical conduct and decisions before using deadly force on the Decedent and whether the officer used other available resources and techniques as an alternative to deadly force, if it was reasonably safe and feasible to an objectively reasonable officer.

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other de-escalation tactics are not retreat. A peace officer does not lose the right to self-defense by using objectively reasonable force to arrest/detain or overcome resistance.

CACI 441.

Plaintiff contends that Officer Jimenez is liable for negligence based on alleged tactical mistakes prior to the shooting. Under California law, negligence liability "can arise if the tactical conduct and decisions leading up to the use of deadly force [by law enforcement] show, as part of the totality of circumstances, that the use of deadly force was unreasonable." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 626 (2013). The California Supreme Court has held that, "[Wlhere the preshooting conduct did not cause the plaintiff any injury independent of the injury resulting from the shooting, the reasonableness of the officers' preshooting conduct should not be considered in isolation. Rather, it should be considered in relation to the question whether the officers' ultimate use of deadly force was reasonable." *Hayes*, 57 Cal. 4th at 632.

D. The elements for a claim under the Bane Act are:

1. The officer used excessive force against the Decedent;
2. The officer intended to violate the Decedent's right to be free of excessive force;
3. The Decedent was harmed; and
4. The officer's conduct was a substantial factor in causing the Decedent's harm.

The officer's intent to violate the constitutional right of another may be demonstrated by a

reckless disregard of those rights where the officer's actions constitute a purposeful deprivation of those rights, even if the officer is unaware of the unlawfulness of the action.

CACI 3066 (rev. 11/2018); *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1044-45 (9th Cir. 2018)

E. Affirmative Defenses

Qualified immunity protects "government officials performing discretionary functions" by "shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "The linchpin of qualified immunity is the reasonableness of the official's conduct." *Rosenbaum v. Washoe County*, 654 F.3d 1001, 1006 (9th Cir. 2011). Reasonableness is judged against the backdrop of the law at the time of the conduct at issue. *Brouseau v. Haugen*, 543 U.S. 194, 198 (2004). Qualified immunity is a legal defense for the Court to decide when raised by a non-suit or post-verdict motion. *Ortiz v. Jordan*, 562 U.S. 180, 191 (2011) (holding qualified immunity must be raised by a Rule 50 motion following trial where disputed facts precluded resolution on summary judgment). Where an officer has probable cause to believe that the suspect poses a threat of death or serious physical harm to the officer or others, the officer is justified in using deadly force. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010); *Cruz v. Cty. of Anaheim*, 765 F.3d 1076, 1078 (9th Cir. 2014) ("It would be unquestionably reasonable for police to shoot a suspect in [decedent's] position if he reaches for a gun in his waistband, or even if he reaches there for some other reason. Given [decedent's] dangerous and erratic behavior up to that point, the police would doubtless be justified in responding to such a threatening gesture by opening fire."); *Reynolds v. Cnty. of San Diego*, 858 F. Supp. 1064, 1072 (S.D. Cal. 1994) ("[A]n officer may reasonably use deadly force when he or she confronts an armed suspect in close proximity whose actions indicate an intent to attack. In these circumstances, the Courts cannot ask an officer to hold fire in order to ascertain whether the suspect will, in fact, injure or murder the officer."). Thus, the officer's use of lethal force was objectively reasonable.

Immunity under California Penal Code §§ 835 and 835a. The elements for this affirmative

defense are:

1. The officer had reasonable cause to believe the Decedent committed a public offense;

2. The force used was reasonable, based on the totality of the circumstances, to overcome the Decedent's resistance and in protection of the life and safety of the officer or another person; and

3. The Decedent was subject to restraint reasonable to overcome his resistance and in protection of the life and safety of the officer or another person.

*Edson v. Cty. of Anaheim*, 63 Cal. App. 4th 1269, 1272-73 (1998) (noting "police battery actions recognize[ ]" § 835a's protections by requiring a plaintiff to "prove[ ] unreasonable force was used").

Self-defense. The elements of self-defense are:

1. The officer reasonably believed the Decedent was going to harm him or other person; and

2. The officer only used the amount of force that was reasonably necessary to protect himself or other persons.

CACI 1304 (Self-Defense/Defense of Others).

Immunity under California Penal Code § 196(b). This affirmative defense justifies a homicide by a peace officer only when:

1. The officer reasonably believes, based on the totality of the circumstances, that deadly force is necessary; and

2. To defend against an imminent threat of death or serious bodily injury to the officer or to another person, or to apprehend a fleeing person for any felony that threatened or resulted in death or serious bodily injury, if the officer reasonably believes that the person will cause death or serious bodily injury to another unless immediately apprehended.

Cal. Penal Code §§ 196(b), 835a(c); *Gilmore v. Sup. Ct.*, 230 Cal. App. 3d 416, 422 (1991) ("[I]f, in a particular case, the facts establish a justifiable [use of force] under the Penal Code, there is no civil liability.").

//

//

**ABANDONED AND PREVIOUSLY DECIDED ISSUES**

**Plaintiffs' Statement**:

There are no abandoned issues. At the summary judgment stage, the Court granted summary judgment for Defendant Jimenez on Plaintiff's First and Fourteenth Amendments claim for loss of familial relationship.

**Defendants' Statement**:

Defendant has not abandoned any issue.

**WITNESS LISTS**

Plaintiff and Defendant Jimenez have attached their respective witness lists as Exhibits "A" and "B" to this Joint Statement.

**EXHIBIT LISTS**

Plaintiff and Defendant Jimenez have attached their respective exhibit lists as Exhibits "C" and "D." The parties joint exhibit list is attached as Exhibit "E" to this Joint Statement.

**DISCOVERY DOCUMENTS TO BE OFFERED AT TRIAL**

**Plaintiff's Statement**:

Plaintiff, at this time, does not expect to offer any portions of depositions, answers to interrogatories, and/or responses to requests for admission, other than for impeachment purposes.

**Defendant Jimenez's Statement**:

Defendant may use any portion of a witness's deposition testimony at trial for impeachment purposes.

Defendant intends to offer the following responses to discovery at trial:

Plaintiff's Responses to Interrogatory Nos. 7, 9, 10, 19, 20, 21, and 22.

Plaintiff's Responses to Request for Admission Nos. 32, 33, 34, and 35.

**FURTHER DISCOVERY OR MOTIONS**

The parties do not intend to request further discovery or file additional pretrial motions other than the potential motions *in limine* and briefs identified above in Section 6.

//

///

## STIPULATIONS

**Plaintiff's Statement**:

Plaintiff is willing to stipulate to the listed Undisputed Facts.

**Defendant Jimenez's Statement**:

Defendant is willing to stipulate to the authenticity of relevant unaltered records and photographs prepared by CHP and the Madera County Sheriff's Office who investigated the incident. Alternatively, defendant is willing to stipulate to the authenticity of such records through the declaration of the custodian of records.

## AMENDMENTS – DISMISSALS

**Plaintiffs' Statement**:

Plaintiff has no amendments or dismissals.

**Defendant Jimenez's Statement**:

Defendant does not intend to amend his answer or dismiss any issue.

## SETTLEMENT NEGOTIATIONS

On August 17, 2026, the parties had a mediation that was set up through the Court's VDRP program. The case did not settle.

## AGREED STATEMENTS

The parties agree that the Neutral Statement of the Case in Section 1, above, may be read to the jury. There are no other agreed statements.

## SEPARATE TRIAL OF ISSUES

**Plaintiffs' Statement**:

Plaintiff would be agreeable to bifurcate trial into two phases: (1) liability, damages, and predicate question to punitive damages, and (2) punitive damages. Plaintiff reserves the right to seek bifurcation of trial into two phases: (1) liability and predicate question to punitive damages, and (2) damages, based on the Court's ruling on Plaintiffs' motions *in limine*.

**Defendants' Statement**:

Defendant is agreeable to bifurcation on the issue of the amount of punitive damages in the

event the jury makes the requisite liability finding against Defendant. Should the Court grant the request to bifurcate, Defendant expects the second phase of the trial to begin immediately following the verdict.

**IMPARTIAL EXPERTS – LIMITATIONS OF EXPERTS**

Plaintiff and Defendant Jimenez do not believe that an appointment by the Court of impartial expert witnesses or that a limitation of the number of expert witnesses is necessary.

**ATTORNEYS' FEES**

**Plaintiff's Statement**:

If Plaintiff is successful at trial, Plaintiff's counsel will file a motion seeking reimbursement for Plaintiff's attorneys' fees and costs, pursuant to 42 U.S.C. § 1988 and as permitted by the Bane Act and California Civil Code § 1021.

**Defendant Jimenez's Statement**:

To the extent permitted by law, Defendant will seek to recover costs and attorney's fees should he prevail at trial.

**SPECIAL HANDLING OF TRIAL EXHIBITS**

Plaintiff and Defendant Jimenez do not anticipate presenting exhibits at trial that require special handling.

**TRIAL PROTECTIVE ORDER**

Plaintiff and Defendant Jimenez do not anticipate the need for a protective order at this time.

**MISCELLANEOUS**

None at this time.

Respectfully submitted,

Dated: August 19, 2026

LAW OFFICES OF DALE K. GALIPO
LAW OFFICES OF PANOS LAGOS
LAW OFFICE OF SANJAY S. SCHMIDT

*/s/ Sanjay S. Schmidt*
By: Sanjay S. Schmidt
Dale K. Galipo
Panos Lagos
Sanjay S. Schmidt
Attorneys for Plaintiff Joshua Juarez (J.A.J.)

DATED: August 19, 2026

ROB BONTA
Attorney General of California
NORMAN D. MORRISON
Supervising Deputy Attorney General

By: *_/s/ Diana Esquivel_* (as authorized 8/19/26)

DIANA ESQUIVEL
Deputy Attorney General
*Attorneys for Defendant Jimenez*