UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSHUA A. JUAREZ, individually and as successor in interest to SANTANA JUAREZ GONZALEZ, Deceased,[1]

Plaintiff,

v.

EFRAIN JIMENEZ, et al.,

Defendants.

No. 1:18-cv-01138-KES-EGC

TENTATIVE PRETRIAL ORDER

Deadlines:

Motions in Limine Filing: **September 29, 2026**
Oppositions: **October 13, 2026**

Proposed Jury Instructions/Verdict Form: **October 28, 2026**
Objections: **November 3, 2026**

Proposed Voir Dire: **November 3, 2026**

Trial Briefs: **November 3, 2026**

Trial Confirmation Hearing: **October 26, 2026, at 3:00 p.m. in Courtroom 6**

Jury Trial: **November 10, 2026, at 8:30 a.m. in Courtroom 6**

Estimated Trial Time: **4–6 days**

On August 31, 2026, the Court conducted a final pretrial conference. Panos Lagos, Dale

[1] Plaintiff J.A.J. was a minor at the time this action commenced. Plaintiff indicates that he is no longer a minor and requests that the Court add plaintiff's full name to the docket. Doc. 109 at 1. Plaintiff's unopposed request is granted. The Clerk of the Court is directed to update plaintiff's name from "J.A.J." to "JOSHUA A. JUAREZ, individually and as successor in interest to SANTANA JUAREZ GONZALEZ, Deceased."

K. Galipo and Sanjay S. Schmidt appeared as counsel for plaintiff; Diana Esquivel appeared as counsel for defendant Efrain Jimenez. This matter is set for a jury trial on **November 10, 2026, at 8:30 a.m. in Courtroom 6** before the undersigned. Having considered plaintiff and defendant Jimenez's pretrial statement and views, the Court issues this tentative pretrial order.

This action is set for trial on plaintiff's fourth amendment claim for excessive force and plaintiff's state law claims of negligence, battery and assault, and violation of the Bane Act, against defendant Jimenez.

I. JURISDICTION/VENUE

This Court has jurisdiction over Plaintiff's 42 U.S.C. § 1983 federal claim under 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction over Plaintiff's state law causes of action under 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391 because all relevant events in this action occurred within Madera County, California, within the venue of this federal district. Jurisdiction and venue are not contested.

II. JURY

The parties have requested a jury trial. The jury will consist of eight jurors.

Plaintiff and Defendant Jimenez estimate that trial will take between four to six (4-6) court days.

III. UNDISPUTED FACTS

Plaintiff and Defendant Jimenez agree that the following facts are undisputed:

a) The incident occurred on August 20, 2017.

b) Officer Jimenez was assigned to patrol the southeast area of Madera County on August 20.

c) At all relevant times during the incident, Officer Jimenez was acting within the course and scope of his employment as a CHP officer.

d) At all relevant times during the incident, Officer Jimenez was acting under color of law.

e) Officer Jimenez discharged his firearm twice at Decedent.

f) Decedent was struck twice in the back.

g) Decedent died at the scene as a result of his gunshot wounds.

h) A gun was not found on Decedent's person after he was shot.

IV. DISPUTED FACTUAL ISSUES

a) Whether Officer Jimenez provided a verbal warning to Decedent that he was going to use deadly force prior to shooting Decedent;

b) Whether Decedent was running or walking or stumbling or staggering in the direction of the Red Barn immediately prior to Officer Jimenez firing the first shot;

c) Whether Decedent made any threatening or rapid/furtive movement immediately prior to the first shot, such that Officer Jimenez reasonably believed that he was in danger of being shot;

d) Whether Defendant Jimenez had less-lethal force alternatives or options when he fired his first shot;

e) Whether Defendant Jimenez had less-lethal force alternatives or options when he fired his second shot;

f) The amount of time that elapsed between Officer Jimenez's first shot and second shot;

g) Whether Officer Jimenez issued any commands to Decedent between his first shot and second shot;

h) Whether Decedent posed an immediate threat of death or serious bodily injury to Officer Jimenez and/or the patrons at the Red Barn at the time of the shooting;

i) Whether Officer Jimenez's conduct and tactics prior to the use of lethal force against Decedent were appropriate and reasonable;

j) Whether Officer Jimenez's use of deadly force was objectively reasonable under the totality of the circumstances;

k) Whether Officer Jimenez acted negligently in using deadly force against Decedent, including any pre-shooting tactical negligence;

l) Whether Officer Jimenez acted in reckless disregard of Decedent's right to be free from excessive force when he shot Decedent;

m) Whether Officer Jimenez reasonably believed that Decedent had a gun in his possession at the time of the shooting;

n) Whether Decedent was a fleeing person for a felony that threatened or resulted in death or

serious bodily injury and Officer Jimenez reasonably believed that the Decedent would cause death or serious bodily injury to another unless immediately apprehended;

o) Whether Officer Jimenez reasonably believed, based on the totality of the circumstances, that deadly force was necessary to defend against an imminent threat of death or serious bodily injury to the officer or to another person or to apprehend a fleeing person for a felony that threatened or resulted in death or serious bodily injury; and

p) Whether Officer Jimenez reasonably believed the Decedent was going to harm him or other persons and officer Jimenez only used the amount of force that was reasonably necessary to protect himself or other persons.

## V. DISPUTED EVIDENTIARY ISSUES / MOTIONS IN LIMINE

The purpose of a motion in limine is to establish in advance of the trial that certain evidence should or should not be admitted at trial. The Court will grant a motion in limine precluding use of evidence only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. The Court does not encourage the filing of motions in limine unless they are addressed to issues that can realistically be resolved by the Court prior to trial and without dependence on other evidence which will be introduced by the parties at trial.

In advance of filing any motion in limine, the parties shall meet and confer to determine whether they can resolve any disputes and avoid filing motions in limine. The parties shall exhaust efforts to resolve such evidentiary disputes prior to filing a motion in limine and shall include in any such motion a certification concerning their meet and confer efforts.

The parties anticipate filing the evidentiary objections and/or motions in limine identified below. Any motion in limine shall be filed no later than **September 29, 2026.** The motion must clearly identify the nature of the evidence that the moving party seeks to have admitted or seeks to prohibit the other side from offering at trial. Any opposition to a motion in limine shall be filed no later than **October 13, 2026.** After reviewing the motions and any opposition briefs, the Court will notify the parties if a reply brief is necessary. As such, parties shall not file any reply briefs without court approval. The Court will also notify the parties if it will hear argument on any motions in limine prior to the first day of trial.

1. Plaintiff's Position:

Plaintiff intends to bring motions *in limine*, submit trial briefs, and/or seek the Court's direction and assistance on the following issues:

a) Exclude evidence or references to Decedent's criminal history that was unknown to the officers at the time of the incident;

b) Exclude evidence or references to Decedent's alleged gang affiliations that were unknown to the officers at the time of the incident;

c) Exclude evidence or references to Decedent's history with drugs and alcohol and the results of the toxicology test acquired at the time of autopsy;

d) Exclude testimony or reference to certain opinions by Defendant Jimenez's police practices expert Clarence Chapman;

e) Exclude evidence or references to findings by the State of California that Officer Jimenez's use of force was not criminal, was reasonable, was justified, and/or was within policy.

f) Exclude cumulative/duplicative testimony by Defendants' non-retained experts regarding police practices, training, and policies;

g) Exclude testimony or argument that it's permissible for officers to shoot a subject for fleeing;

h) Possible bifurcation of trial into two phases: (1) liability and predicate question to punitive damages, and (2) damages, depending on the Court's ruling on Plaintiff's motions *in limine* to exclude certain evidence.

2. Defendant Jimenez's Position:

Defendant Jimenez intends to file motions *in limine*, trial briefs, or seek the Court's guidance on the following issues:

1. Exclude and preclude lay witnesses from testifying about Decedent's state of mind, mental state, and other opinions offered to explain Decedent's conduct.
2. Exclude or limit portions of Plaintiff's police-practices expert Roger Clark's opinions and testimony.
3. Exclude or limit the testimony and opinions of Plaintiff's non-retained video expert

Paul Kealoha-Blake and any documents/photographs he prepared.

4. Exclude or limit photographs of Decedent's autopsy and the crime scene.
5. Exclude the photographs taken by Plaintiff's attorney Panos Lagos.
6. Exclude and preclude any witness from testifying about the authenticity or accuracy of the CHP AirOps video footage.
7. Limit the testimony of pathologist Dr. Mark Super.
8. Exclude any witness, document, or information not disclosed, identified, or produced in discovery.
9. Permit Defendant to introduce evidence of Decedent's criminal history, gang affiliation, and drug/alcohol use for purposes of wrongful death damages and to rebut the anticipated testimony of Decedent's parents and family members.
10. Bifurcate trial on the amount of punitive damages in the event the jury makes the requisite finding during the liability stage.

VI. SPECIAL FACTUAL INFORMATION

**a) Nature of the Incident**

This case arises out of the fatal shooting of Decedent Santana Juarez Gonzalez by California Highway Patrol Officer Efrain Jimenez. The primary issues to be evaluated by the trier of fact are the "objective reasonableness" of Officer Jimenez's use of deadly force against Decedent, whether Officer Jimenez was negligent in his tactical conduct and decisions leading up to his use of deadly force and in his use of deadly force, Decedent's negligence if any, whether Jimenez acted with a reckless disregard for the Decedent's rights, and whether punitive damages are warranted and, if so, the extent thereof.

**b) Plaintiff's Age and Damages**

Plaintiff Joshua Juarez is 20 years old. Joshua Juarez brings claims individually and as Decedent's successor in interest and seeks survival damages, including pain and suffering and loss of life, on behalf of Decedent and noneconomic wrongful death damages.

**c) Dependents, Decedent's Contributions, Decedent's Physical Condition, and Decedent's Education and Training**

Plaintiff does not seek damages for loss of financial contribution, nor does Plaintiff seek damages for any loss of earning or earning capacity on behalf of Decedent. According to the autopsy conduct on Decedent, Decedent was in relatively good physical health at the time of his death.

VII. RELIEF SOUGHT

1. **Plaintiff's Statement:** Plaintiff seeks survival damages for loss of life, loss of enjoyment of life and pre-death pain and suffering, pursuant to his section 1983 claim for excessive force in violation of the Fourth Amendment to the U.S. Constitution, and seeks survival damages pursuant to his claim for excessive force in violation of the Bane Act. Further, Plaintiff seeks wrongful death damages for the loss of Decedent's love, companionship, affection, guidance, society, and support, pursuant to his state law claims for battery and negligence. Plaintiff seeks punitive damages, pursuant to his federal excessive force claim and his state law claims for battery and violation of the Bane Act. Plaintiff seeks attorneys' fees under state and federal law. Plaintiff also seeks to recover the costs of suit.
2. **Defendant Jimenez's Statement:** Defendant seeks judgment in his favor, costs, and, if applicable, attorney's fees.

VIII. POINTS OF LAW

The claims and defenses arise under both federal and state law.

1. The elements of, standards for, and burden of proof in a claim pursuant to 42 U.S.C. § 1983 for excessive-force arising under the Fourth Amendment.
2. The elements of, standards for, and burden of proof in a claim of a violation of the Bane Act (Cal. Civ. Code § 52.1).
3. The elements of, standards for, and burden of proof in a claim of negligence (wrongful death).
4. The elements of, standards for, and burden of proof in a claim of assault and

battery (wrongful death).

5. The elements of, standards for, and burden of proof for an affirmative defense of immunity under California Penal Code §§ 835 and 835a.

6. The elements of, standards for, and burden of proof for an affirmative defense of self-defense.

7. The elements of, standards for, and burden of proof for an affirmative defense of immunity under California Penal Code § 196(b).

The parties also identify the following additional points of law:

1. **Plaintiff's Points of Law:**

Claim 1: Excessive Force (Survival Claim, Fourth Amendment).

Officer Jimenez used excessive force against Decedent in violation of his Fourth Amendment rights and 42 U.S.C. § 1983. At the time of the use of force, Mr. Juarez posed no immediate threat to anyone.

Plaintiff seeks survival damages, punitive damages, and reasonable attorneys' fees under this claim.

Elements:

1. Officer Jimenez acted under color of law;
2. Officer Jimenez used excessive force against Decedent;
3. The excessive force was a cause of Decedent's injury or death.

*See* Ninth Circuit Manual of Model Jury Instructions, No. 9.27.

Claim 2: Violation of the Bane Act (Cal. Civ. Code § 52.1).

Plaintiff contends that Officer Jimenez, while acting in the course and scope of his employment as a California Highway Patrol police officer, violated the Bane Act, CAL. CIV. CODE § 52.1. Section 52.1 does not require a showing of "threats, intimidation and coercion" separate from an underlying constitutional violation. *See Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1042 (9thCir. 2018); *see also Cornell v. City and County of San Francisco* 225 Cal.Rptr.3d at 382-83 (2017) (holding that "[n]othing in the text of the statute requires that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged" and "that the

use of excessive force can be enough to satisfy the 'threat, intimidation or coercion' element of Section 52.1."). Further, although the Bane Act requires "a specific intent to violate the arrestee's right to freedom from unreasonable seizure[,]" *Reese*, 888 F.3d at 1045. "it is not necessary for the defendant[] to have been 'thinking in constitutional or *legal terms* at the time of the incident[], because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.'" *Id*. (citation omitted) (italics in original); *Shoar v. Cnty. of Santa Clara*, No. C 22-00799 WHA, 2022 WL 10177673, at *2 (N.D. Cal October 17, 2022) ("A plaintiff can satisfy the specific intent requirement of the Bane Act by showing defendant acted with reckless disregard of the right at issue").

Plaintiff seeks survival damages, treble damages, punitive damages and reasonable attorneys' fees under this claim.

<u>Elements</u>:

1. Officer Jimenez used excessive force against Decedent;
2. Officer Jimenez, in using excessive force, acted with a reckless disregard for Decedent's constitutional rights;
3. Decedent was harmed; and
4. Officer Jimenez's use of excessive force was a substantial factor in causing Decedent's harm.

*See* CACI 3066.

<u>Claim 3:</u> <u>Negligence (Wrongful Death Claim, State Law)</u>.

Plaintiff contends that Officer Jimenez, while acting in the course and scope of his employment as a CHP police officer, was negligent in his tactical conduct and decisions before using force on Decedent and used unreasonable force on Decedent. *See Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 635-8 (Cal. 2013).

Plaintiff seeks wrongful death damages under this claim, including the loss of Decedent's love, companionship, comfort, care, assistance, protection, affection, society, moral support and financial support. *See* CACI 3921.

<u>Elements</u>:

1. Officer Jimenez used deadly force against Decedent;

2. Officer Jimenez's use of deadly force was not necessary to defend human life;

3. Decedent was harmed/killed; and

4. Officer Jimenez's use of deadly force was a substantial factor in causing Decedent's harm/death.

*See* CACI 441.

<u>Claim 4:</u> <u>Assault and Battery (Wrongful Death Claim, State Law)</u>.

Officer Jimenez used unreasonable force against Decedent even though Decedent posed no immediate threat of death or serious bodily injury.

Plaintiff seeks wrongful death damages under this claim, including the loss of decedent's love, companionship, comfort, care, assistance, protection, affection, society, and moral support. *See* CACI 3921.

<u>Elements</u>:

1. Officer Jimenez used deadly force on Decedent;

2. Officer Jimenez's use of deadly force was not necessary to defend human life;

3. Decedent was harmed/killed; and

2. Officer Jimenez's use of deadly force was a substantial factor in causing Decedent's harm/death.

*See* CACI 1305B.

**2. <u>Defendant Jimenez's Points of Law:</u>**

<u>A. The elements for a 42 U.S.C. § 1983 excessive-force claim arising under the Fourth Amendment are</u>:

1. The officer acted under color of state law;

2. The officer deprived the Decedent of his constitutional right to be free of excessive force;

3. The use of force was objectively unreasonable under all of the circumstances;

4. The use of force caused the Decedent harm; and

5. Plaintiff is the successor-in-interest to the Decedent.

Ninth Circuit Model Civil Jury Instrs. 9.3, 9.27; *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Tatum v. Cty. & Cnty. of S.F.*, 441 F.3d 1090, 1100 n.2 (9th Cir. 2006) ("[T]he decedent's 'successor in interest' may prosecute [a section 1983] survival action if the person … satisfies the requirements of California law.").

In determining whether the officer used excessive force, all of the circumstances known to the officer on the scene must be considered, including:

1. the nature of the crime or other circumstances known to the officer at the time force was applied;

2. whether Decedent posed an immediate threat to the safety of the officer or others;

3. whether Decedent was actively resisting arrest or attempting to evade arrest by flight;

4. the amount of time the officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

5. the relationship between the need for the use of force and the amount of force used;

6. any effort made by the officer to temper or to limit the amount of force;

7. the severity of the security problem at issue;

8. the availability of alternative methods to subdue the Decedent;

9. the number of lives at risk and the parties' relative culpability, i.e., which party created the dangerous condition situation and which party is more innocent;

10. whether it was practical for the officer to give a warning of the imminent use of force, and whether such warning was given;

11. whether a reasonable officer would have or should have accurately perceived a mistaken fact; and

12. whether there was probable cause for a reasonable officer to believe that the suspect had committed a crime involving the infliction or threatened infliction of serious physical harm.

Ninth Circuit Model Civil Jury Inst. 9.27 (modified).

In general, all claims of excessive force, whether deadly or not, should be analyzed under the objective reasonableness standard of the Fourth Amendment as applied in *Scott v. Harris*,

550 U.S. 372, 381-85 (2007), *Graham*, 490 U.S. at 397, *Tennessee v. Garner*, 471 U.S. 1, 7-12 (1985), and *Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019).

In assessing reasonableness, the fact-finder should give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. (citation omitted). In addition, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id*. at 396-97.

The Ninth Circuit has repeatedly emphasized that the most important factor is "whether the suspect posed an immediate threat to the safety of the officers or others." *S.B. v. Cty. of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017) (internal quotation marks omitted); *Orn v. Cty. of Tacoma*, 949 F.3d 1167 (9th Cir. 2020); *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019). It is well-established that where a suspect threatens an officer with a weapon or where the officer has probable cause to believe that the suspect poses a threat of death or serious physical harm to the officer or others, the officer is justified in using deadly force. *Tennessee v. Garner*, 471 U.S. at 11; *Wilkinson v. Torres*, 610 F.3d 546, 546 (9th Cir. 2010).

B. The elements of a claim for battery by a peace officer under California law are:

A peace officer may use deadly force only when necessary in defense of human life. Plaintiff claims that Officer Jimenez unnecessarily used deadly force on Decedent. To establish this claim, Plaintiff must prove all of the following:

1. That the officer intentionally touched Decedent or caused Decedent to be touched;
2. That the officer used deadly force on Decedent;
3. That the officer's use of deadly force was not necessary to defend human life;
4. That Decedent was killed;

5. That the officer's use of deadly force was a substantial factor in causing Decedent's death; and

6. That Plaintiff is the successor-in-interest to Decedent.

Officer Jimenez's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by the officer at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily harm to the officer or to another person, or to apprehend a fleeing person for a felony, when all of the following conditions are present:

1. the felony threatened or resulted in death or serious bodily injury to another;

2. Officer Jimenez reasonably believed that the person fleeing would cause death or serious bodily injury to another unless immediately apprehended; and

3. If practical under the circumstances, Officer Jimenez made reasonable efforts to identify himself as a peace officer and to warn that deadly force would be used unless the officer had objectively reasonable grounds to believe the person is aware of those facts.

A person being arrested/detained has a duty not to use force to resist the peace officer unless the peace officer is using unreasonable force.

"Deadly force" means any use of force that creates a substantial risk of causing death or serious bodily injury, including, but not limited to, the discharge of a firearm.

A threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to the peace officer at the time, including the conduct of the officer and Decedent leading up to the use of deadly force. In determining whether the officer's use of deadly force was necessary in defense of human life,

the jury must consider the officer's tactical conduct and decisions before using deadly force on the Decedent and whether the officer used other available resources and techniques as an alternative to deadly force, if it was reasonably safe and feasible to do so.

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other de-escalation tactics are not retreat. A peace officer does not lose the right to self-defense by use of objectively reasonable force to effect the arrest or to prevent escape or to overcome resistance. A peace officer does, however, have a duty to use reasonable tactical repositioning or other de-escalation tactics.

CACI 1305B.

The same *Graham* factors apply to the reasonableness of the use of force as under a Fourth Amendment claim. *Hernandez v. Cty. of Pomona*, 46 Cal. 4th. 501, 514 (2009). As with Fourth Amendment claims, a claim for battery is a personal right that may not be vicariously asserted. Cal. Civ. Proc. Code § 377.32. While the Plaintiff may step into the Decedent's shoes to prosecute this claim on his behalf, the Plaintiff has no standing to do so for themselves because Officer Jimenez did not commit a battery against Plaintiff. Indeed, it has been established that "wrongful death" damages compensate a Plaintiff for his own independent pecuniary injury suffered by loss of the Decedent, and are separate and distinct from any damages recoverable by the Decedent had he survived. Cal. Civ. Proc. Code §§ 377.22, 377.60; *Earley v. Pacific Elec. Ry. Co*., 176 Cal. 79, 81 (1917); *Justus v. Atchison*, 19 Cal. 3d 564, 572, 573 (1977).

C. The elements for a negligence claim against a peace officer for use of deadly force are:

1. That Defendant was a peace officer;
2. Officer Jimenez used deadly force on the Decedent;
3. Officer Jimenez's use of deadly force was not necessary to defend human life;
4. The Decedent was killed; and
5. Officer Jimenez's use of deadly force was a substantial factor in causing the Decedent's death.

Officer Jimenez's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by the officer at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily injury to the officer or another person; or to apprehend a fleeing person for a felony, when all of the following conditions are present:

1. the felony threatened or resulted in death or serious bodily injury to another;

2. Officer Jimenez reasonably believed that the person fleeing would cause death or serious bodily injury to another unless immediately apprehended; and

3. Officer Jimenez made reasonable efforts to identify himself as a peace officer and to warn that deadly force would be used, unless the officer had objectively reasonable grounds to believe the person is aware of those facts.

A person being arrested/detained has a duty not to use force to resist a peace officer unless the peace officer is using unreasonable force.

A threat of death or serious bodily injury is "imminent" if, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or to another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to or perceived by the peace officer at the time, including the conduct of Officer Jimenez and the Decedent leading up to the use of deadly force. In determining whether the officer's use of deadly force was necessary in defense of human life, you must consider the officer's tactical conduct and decisions before using deadly force on the Decedent and whether the officer used other available resources and techniques as an alternative to deadly force, if it was reasonably safe and feasible to an objectively reasonable officer.

A peace officer who makes attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other de-escalation tactics are not retreat. A peace officer does not lose the right to self-defense by using objectively reasonable force to arrest/detain or overcome resistance.

CACI 441.

Plaintiff contends that Officer Jimenez is liable for negligence based on alleged tactical mistakes prior to the shooting. Under California law, negligence liability "can arise if the tactical conduct and decisions leading up to the use of deadly force [by law enforcement] show, as part of the totality of circumstances, that the use of deadly force was unreasonable." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 626 (2013). The California Supreme Court has held that, "[Wlhere the preshooting conduct did not cause the plaintiff any injury independent of the injury resulting from the shooting, the reasonableness of the officers' preshooting conduct should not be considered in isolation. Rather, it should be considered in relation to the question whether the officers' ultimate use of deadly force was reasonable." *Hayes*, 57 Cal. 4th at 632.

D. <u>The elements for a claim under the Bane Act are:</u>

1. The officer used excessive force against the Decedent;
2. The officer intended to violate the Decedent's right to be free of excessive force;
3. The Decedent was harmed; and
4. The officer's conduct was a substantial factor in causing the Decedent's harm.

The officer's intent to violate the constitutional right of another may be demonstrated by a reckless disregard of those rights where the officer's actions constitute a purposeful deprivation of those rights, even if the officer is unaware of the unlawfulness of the action.

CACI 3066 (rev. 11/2018); *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1044-45 (9th Cir. 2018)

E. <u>Affirmative Defenses</u>

Qualified immunity protects "government officials performing discretionary functions" by "shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v.*

*Creighton*, 483 U.S. 635, 638 (1987). "The linchpin of qualified immunity is the reasonableness of the official's conduct." *Rosenbaum v. Washoe County*, 654 F.3d 1001, 1006 (9th Cir. 2011). Reasonableness is judged against the backdrop of the law at the time of the conduct at issue. *Brouseau v. Haugen*, 543 U.S. 194, 198 (2004). Qualified immunity is a legal defense for the Court to decide when raised by a non-suit or post-verdict motion. *Ortiz v. Jordan*, 562 U.S. 180, 191 (2011) (holding qualified immunity must be raised by a Rule 50 motion following trial where disputed facts precluded resolution on summary judgment). Where an officer has probable cause to believe that the suspect poses a threat of death or serious physical harm to the officer or others, the officer is justified in using deadly force. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010); *Cruz v. Cty. of Anaheim*, 765 F.3d 1076, 1078 (9th Cir. 2014) ("It would be unquestionably reasonable for police to shoot a suspect in [decedent's] position if he reaches for a gun in his waistband, or even if he reaches there for some other reason. Given [decedent's] dangerous and erratic behavior up to that point, the police would doubtless be justified in responding to such a threatening gesture by opening fire."); *Reynolds v. Cnty. of San Diego*, 858 F. Supp. 1064, 1072 (S.D. Cal. 1994) ("[A]n officer may reasonably use deadly force when he or she confronts an armed suspect in close proximity whose actions indicate an intent to attack. In these circumstances, the Courts cannot ask an officer to hold fire in order to ascertain whether the suspect will, in fact, injure or murder the officer."). Thus, the officer's use of lethal force was objectively reasonable.

<u>Immunity under California Penal Code §§ 835 and 835a.</u> The elements for this affirmative defense are:

1. The officer had reasonable cause to believe the Decedent committed a public offense;
2. The force used was reasonable, based on the totality of the circumstances, to overcome the Decedent's resistance and in protection of the life and safety of the officer or another person; and
3. The Decedent was subject to restraint reasonable to overcome his resistance and in protection of the life and safety of the officer or another person.

*Edson v. Cty. of Anaheim*, 63 Cal. App. 4th 1269, 1272-73 (1998) (noting "police battery actions recognize[ ]" § 835a's protections by requiring a plaintiff to "prove[ ] unreasonable force was used").

Self-defense. The elements of self-defense are:

1. The officer reasonably believed the Decedent was going to harm him or other person; and

2. The officer only used the amount of force that was reasonably necessary to protect himself or other persons.

CACI 1304 (Self-Defense/Defense of Others).

Immunity under California Penal Code § 196(b). This affirmative defense justifies a homicide by a peace officer only when:

1. The officer reasonably believes, based on the totality of the circumstances, that deadly force is necessary; and

2. To defend against an imminent threat of death or serious bodily injury to the officer or to another person, or to apprehend a fleeing person for any felony that threatened or resulted in death or serious bodily injury, if the officer reasonably believes that the person will cause death or serious bodily injury to another unless immediately apprehended.

Cal. Penal Code §§ 196(b), 835a(c); *Gilmore v. Sup. Ct.*, 230 Cal. App. 3d 416, 422 (1991) ("[I]f, in a particular case, the facts establish a justifiable [use of force] under the Penal Code, there is no civil liability.").

**ANY CAUSES OF ACTION OR AFFIRMATIVE DEFENSES NOT EXPLICITLY ASSERTED IN THE PRETRIAL ORDER UNDER POINTS OF LAW AT THE TIME IT BECOMES FINAL ARE DISMISSED AND DEEMED WAIVED.**

Trial briefs addressing the points of law implicated by these remaining claims shall be filed with this Court no later than **November 3, 2026**, in accordance with Local Rule 285.

///

///

///

IX. ABANDONED ISSUES

1. Plaintiff's Statement: There are no abandoned issues. At the summary judgment stage, the Court granted summary judgment for Defendant Jimenez on Plaintiff's First and Fourteenth Amendments claim for loss of familial relationship.

2. Defendant Jimenez's Statement: Defendant has not abandoned any issue.

X. WITNESSES

Plaintiff's witnesses are listed in **Attachment A**. Defendant Jimenez's witnesses are listed in **Attachment B.**

1. **The Court does not allow undisclosed witnesses to be called for any purpose, including impeachment or rebuttal, unless they meet the following criteria:**
   a. The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence that could not be reasonably anticipated at the pretrial conference, or
   b. The witness was discovered after the pretrial conference and the proffering party makes the showing required in paragraph 2, below.
2. Upon the post pretrial discovery of any witness a party wishes to present at trial, the party shall promptly inform the Court and opposing parties of the existence of the unlisted witnesses so the Court may consider whether the witnesses shall be permitted to testify at trial. The witnesses will not be permitted unless:
   a. The witness could not reasonably have been discovered prior to the discovery cutoff;
   b. The Court and opposing parties were promptly notified upon discovery of the witness;
   c. If time permitted, the party proffered the witness for deposition; and
   d. If time did not permit, a reasonable summary of the witness's testimony was provided to opposing parties.

XI. EXHIBITS, SCHEDULES, AND SUMMARIES

Joint exhibits are listed in **Attachment C**. Plaintiff's exhibits are listed in **Attachment D**.

Defendant Jimenez's exhibits are listed in **Attachment E.**

No exhibit shall be marked or entered into evidence under multiple exhibit numbers, and the parties are hereby directed to meet and confer for the purpose of designating joint exhibits. All exhibits must be pre-marked as discussed below. At trial, joint exhibits shall be marked for identification as JX and listed numerically, e.g., JX-1, JX-2. To the extent the parties have any objections to jointly marked exhibits, they must make such objections by the deadline set out below. To the extent the parties also have separate exhibits, Plaintiff's exhibits shall be listed numerically and Defendants' exhibits shall be listed alphabetically. All exhibits must be pre-marked.

The parties must prepare four (4) separate exhibit binders for use by the Court at trial, with a side tab identifying each exhibit in accordance with the specifications above. Each binder shall have an identification label on the front and spine. The parties must exchange exhibits no later than **October 15, 2026.** Any objections to exhibits shall be filed no later than **October 22, 2026.** The final exhibits are due to the Court on **November 3, 2026.** In making any objection, the party is to set forth the grounds for the objection. **As to each exhibit which is not objected to, it shall be marked and received into evidence and will require no further foundation**.

**The Court does not allow the use of undisclosed exhibits for any purpose, including impeachment or rebuttal, unless they meet the following criteria:**

1. The Court will not admit exhibits other than those identified on the exhibit lists referenced above unless:
    a. The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence that could not have been reasonably anticipated, or
    b. The exhibit was discovered after the issuance of this order and the proffering party makes the showing required in paragraph 2, below.
2. Upon the discovery of exhibits after the discovery cutoff, a party shall promptly inform the Court and opposing parties of the existence of such exhibits so that the court may consider their admissibility at trial. The exhibits will not be received

unless the proffering party demonstrates:

a. The exhibits could not reasonably have been discovered earlier;

b. The Court and the opposing parties were promptly informed of their existence; and

c. The proffering party forwarded a copy of the exhibits (if physically possible) to the opposing party. If the exhibits may not be copied the proffering party must show that it has made the exhibits reasonably available for inspection by the opposing parties.

XII. DISCOVERY DOCUMENTS

1. Plaintiff's Position:

Plaintiff does not expect to offer any portions of depositions, answers to interrogatories, and/or responses to requests for admission, other than for impeachment purposes.

2. Defendant Jimenez's Position:

Defendant Jimenez may use any portion of a witness's deposition testimony at trial for impeachment purposes.

Defendant intends to offer the following responses to discovery at trial:

Plaintiff's Responses to Interrogatory Nos. 7, 9, 10, 19, 20, 21, and 22.

Plaintiff's Responses to Request for Admission Nos. 32, 33, 34, and 35.

**NO DISCOVERY DOCUMENT, OTHER THAN THOSE LISTED IN THIS SECTION OF THE FINAL PRETRIAL ORDER, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."** Fed. R. Civ. P. 16(e); Local Rule 281(b)(12).

Counsel must lodge a copy of any deposition transcript to be used at trial with the Clerk of the Court no later than **November 3, 2026.**

XIII. FURTHER DISCOVERY OR MOTIONS

The parties do not intend to request further discovery or file additional pretrial motions other than the potential motions *in limine* and briefs identified above. Discovery is closed.

XIV. STIPULATIONS

1. Plaintiff's Statement: Plaintiff is willing to stipulate to the listed Undisputed Facts.
2. Defendant Jimenez's Statement: Defendant is willing to stipulate to the authenticity of relevant unaltered records and photographs prepared by CHP and the Madera County Sheriff's Office who investigated the incident. Alternatively, defendant is willing to stipulate to the authenticity of such records through the declaration of the custodian of records.

XV. AMENDMENTS/DISMISSALS

None.

XVI. SETTLEMENT

On August 17, 2026, the parties had a mediation that was set up through the Court's VDRP program. The case did not settle.

XVII. JOINT NEUTRAL STATEMENT OF THE CASE

The parties agree that the following neutral statement of the case be read to the jury:

This case arises out of the fatal officer-involved shooting of Santana Juarez Gonzalez by California Highway Patrol (CHP) Officer Efrain Jimenez during a police pursuit.

The Plaintiff in this case is Joshua Juarez, the now-adult son of Decedent Santana Juarez Gonzalez. The Defendant is CHP Officer Efrain Jimenez Plaintiff contends that Defendant Officer Jimenez used excessive and unreasonable force against Decedent, causing his death. Plaintiff also contends that Defendant Jimenez was negligent in his tactical conduct and decisions and his use of force and acted in reckless disregard of Decedent's constitutional right to be free from an unreasonable seizure and excessive force. Plaintiff is seeking damages as permitted by law.

Defendant Jimenez denies Plaintiff's allegations and asserts that his actions were reasonable under the totality of the circumstances because Decedent presented an imminent threat of death or serious bodily injury to the officer and others.

///

///

XVIII. SEPARATE TRIAL OF ISSUES

1. Plaintiff's Statement: Plaintiff would be agreeable to bifurcate trial into two phases: (1) liability, damages, and predicate question to punitive damages, and (2) punitive damages. Plaintiff reserves the right to seek bifurcation of trial into two phases: (1) liability and predicate question to punitive damages, and (2) damages, based on the Court's ruling on Plaintiffs' motions *in limine*.

2. Defendants' Statement: Defendant is agreeable to bifurcation on the issue of the amount of punitive damages in the event the jury makes the requisite liability finding against Defendant. Should the Court grant the request to bifurcate, Defendant expects the second phase of the trial to begin immediately following the verdict.

The Court will bifurcate the trial with respect to the amount of punitive damages, if necessary. Should a jury find punitive liability in the first phase of the trial, the trial will proceed to a second phase which will consist of any evidence and argument with respect to the appropriate amount of punitive damages. The parties may not present evidence regarding the amount of punitive damages until the second phase of the trial.

XIX. IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

Plaintiff and Defendant Jimenez do not believe that an appointment by the Court of impartial expert witnesses, or a limitation of the number of expert witnesses, is necessary.

XX. ATTORNEYS' FEES

1. Plaintiff's Statement: If Plaintiff is successful at trial, Plaintiff's counsel will file a motion seeking reimbursement for Plaintiff's attorneys' fees and costs, pursuant to 42 U.S.C. § 1988 and as permitted by the Bane Act and California Civil Code § 1021.

2. Defendant Jimenez's Statement: To the extent permitted by law, Defendant will seek to recover costs and attorney's fees should he prevail at trial

///

///

XXI. TRIAL PROTECTIVE ORDER AND REDACTION OF TRIAL EXHIBITS

Plaintiff and Defendant Jimenez do not anticipate presenting exhibits at trial that require special handling.

Plaintiff and Defendant Jimenez do not anticipate the need for a protective order.

Pursuant to the Court's policy, at the end of the trial the Court will return all exhibits to the proffering party to be retained during the pendency of any appeals.

XXII. MISCELLANEOUS

None.

XXIII. ESTIMATED TIME OF TRIAL/TRIAL DATE

Jury trial is set for **November 10, 2026, at 8:30 a.m. in Courtroom 6** before the undersigned. Trial is anticipated to last four to six days. A trial confirmation hearing is set for **October 26, 2026, at 3:00 p.m. in Courtroom 6.**

XXIV. PROPOSED JURY *VOIR DIRE* AND PROPOSED JURY INSTRUCTIONS

1. Proposed Jury Voir Dire

The parties shall file any proposed jury voir dire no later than **November 3, 2026.** Plaintiffs and defendants collectively will be limited to 20 minutes of jury voir dire for each side, unless they show good cause for additional time.

2. Proposed Jury Instructions and Proposed Verdict Form

a. The Court directs the parties to meet and confer, if possible, to generate a joint set of jury instructions and a joint verdict form. The parties shall file no later than **October 28, 2026,** any such joint set of instructions, identified as "Joint Proposed Jury Instructions," and any agreed upon verdict form, identified as a "Joint Proposed Verdict Form." If the parties cannot agree upon certain specific jury instructions and/or the verdict form, they shall file such specific proposed disputed jury instructions and a proposed verdict form as provided in Local Rule 163 no later than **October 28, 2026**.

///

b. The parties shall indicate on any proposed jury instructions or proposed

verdict form the party submitting the proposed instructions or verdict form (i.e., Joint, Plaintiffs', or Defendants').

c. The parties shall also include on all proposed jury instructions the following:

i. The number of the proposed instruction in sequence.

ii. A brief title for the instruction describing the subject matter.

iii. The complete text of the instruction.

iv. The legal authority supporting the instruction.

v. The parties shall, by italics or underlining, designate any modification from statutory or case authority, or any pattern or form instruction, or any other source of pattern instructions.

vi. The parties must specifically state the modification made to the original form instruction and the legal authority supporting the modification.

vii. All blanks in form instructions should be completed and all brackets removed.

d. Ninth Circuit Model Jury Instructions shall be used where the subject of the instruction is covered by the model instructions, including for all standard instructions. State model jury instructions, such as BAJI or CACI instructions, shall be used where applicable as to state law claims. The parties shall designate, by italics or underlining, any proposed modification of instructions from any pattern instruction, such as the Ninth Circuit Model Civil Jury Instructions or other pattern instructions, or from statutory or case authority. The parties must specifically state the modification made to the standard instruction and the legal authority supporting the proposed modification. All instructions shall be short, concise, understandable, and neutral and accurate statements of the law. Argumentative instructions will not be given and must not be submitted.

e. The parties shall e-mail two copies of their proposed jury instructions in Microsoft Word to vgonzales@caed.uscourts.gov no later than **October 28, 2026.** One set shall indicate the party proposing the instruction, with each instruction numbered, and shall cite supporting authority. The other set shall be an exact copy of the first set but shall be a "clean" copy that does not contain the identification of the offering party, the instruction number, supporting authority, or any reference to the Court's disposition of the proposed instruction.

f. The parties shall also provide a copy of their proposed verdict form(s) in Microsoft Word to vgonzales@caed.uscourts.gov no later than **October 28, 2026.**

3. Objections to Proposed Jury Instructions and/or Verdict Form(s)

The parties must file any objections to proposed jury instructions and/or proposed verdict form(s) no later than **November 3, 2026.** Each objection shall identify the challenged instruction and shall provide a concise explanation of the basis for the objection along with citation of authority. When applicable, the objecting party shall submit an alternative proposed instruction on the issue or identify which of his or her own proposed instructions covers the subject.

XXV. <u>TRIAL BRIEFS</u>

Trial briefs are due no later than **November 3, 2026**. Trial briefs shall contain the information required by Local Rule 285.

XXVI. <u>USE OF ELECTRONIC EQUIPMENT IN COURTROOM</u>

Any party wishing to receive an overview or tutorial of the Court's electronic equipment must contact the Courtroom Deputy Victoria Gonzales at (559) 499-5676 or vgonzales@caed.uscourts.gov at least three (3) weeks before the start of trial to schedule a tutorial session at a time convenient to the Court's information technology staff. The parties shall coordinate so all who are interested may attend the IT conference as the Court will hold only one conference per case. The parties and counsel shall confer and advise the courtroom deputy of the date and time that has been agreed upon. Counsel will not be provided any training on the day of

or during the trial. The electronic equipment and resources available for this trial may differ from the equipment and resources available in other courtrooms and may even differ from the equipment and resources available in this courtroom at another time. It is the responsibility of the parties to familiarize themselves with the equipment and resources available for use in this trial prior to the commencement of trial. If any party is unfamiliar with the equipment and resources available for use in this trial, that party may be ordered to proceed without the aid of such equipment and resources and/or may be sanctioned for any fees, costs, or expenses associated with any delay.

XXVII. OBJECTIONS TO PRETRIAL ORDER

The parties may file objections, if any, to this Tentative Pretrial Order within **14 days of the entry of this order**. The parties may file a response to the other parties' objections within **7 days after** the filing of the objections. If no objections are filed, this order will become final without further order of the Court.

The parties are reminded that pursuant to Rule 16(e) of the Federal Rules of Civil Procedure and Local Rule 283 of this Court, this order shall control the subsequent course of this action and shall be modified "only to prevent manifest injustice." Fed. R. Civ. P. 16(e).

///

///

///

///

///

///

///

///

///

///

///

///

XXVIII. COMPLIANCE WITH PRETRIAL ORDER

Strict compliance with this pretrial order and its requirements is mandatory. The Court will enforce the requirements of this pretrial order, and counsel and parties are subject to sanctions for failure to comply fully with this order and its requirements. The Court ADMONISHES the parties and counsel to obey the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders. Failure to do so will make the parties and/or counsel subject to sanctions.

IT IS SO ORDERED.

Dated: September 4, 2026

UNITED STATES DISTRICT JUDGE

**ATTACHMENT A: Plaintiff's Witnesses**

1. Efrain Jimenez (Defendant)
2. Isaac Martinez (CHP Officer)
3. Scott Jobinger (CHP Officer)
4. Shandara Kensey (CHP Officer)
5. Daniel Kerber (Madera County Sheriff's Department Sergeant)
6. Julian Gonzales (Percipient Witness)
7. Luis Huaracha (Percipient Witness)
8. Vernon Franklin (Pistoresi Ambulance Paramedic)
9. Justin Arroyo (Pistoresi Ambulance EMT)
10. Erik Johnson (California Department of Forestry and Fire Protection Fire Captain)
11. Troy Riggs (CalFire Engineer Troy Riggs)
12. Mark Super, M.D. (Medical Examiner)
13. Roger Clark (Plaintiff's Police Practices Expert)
14. Paul Kealoha-Blake (Plaintiff's Video Technician)
15. Joshua Juarez (Plaintiff)
16. Crystal Botello (Plaintiff's Mother)
17. Santana Juarez Jimenez (Plaintiff's Paternal Grandfather)
18. Teresa Gonzalez-Velazquez (Plaintiff's Paternal Grandmother)
19. Madeline Elizabeth Muñoz (Plaintiff's Girlfriend)

**ATTACHMENT B: Defendant Jimenez's Witnesses**

1. Efrain Jimenez, Defendant
2. Clarence Chapman, Police Practices Expert
3. Shandara Kensey, CHP Officer
4. Scott Jobinger, CHP Officer
5. Isaac Martinez, CHP Officer
6. James Yates, CHP Officer
7. Rafael Rivera, CHP Officer
8. Darren Long, CHP Sergeant
9. Pablo Reyna, CHP Sergeant
10. Lincoln McKenna, CHP Sergeant
11. Kevin Clays, CHP Lieutenant
12. Dan Freeman, CHP Officer (AirOps 43 Pilot)
13. Dusty Manning, CHP Officer (AirOps 43)
14. Scott Rodda, CHP Officer (AirOps 40 Pilot)
15. Andrea Brown, CHP Officer (AirOps 40)
16. Jason Hunt, CHP Lieutenant, Central Division's Critical Incident Investigation Team (CIIT) Team Leader
17. Sean Haller, CHP Sergeant, CIIT Lead Investigator
18. Brian Yokley, Sergeant, CIIT Investigator
19. Jarrod Banta, CHP Officer, CIIT Investigator
20. Hipolito Pelayo, CHP Officer, CIIT Investigator
21. Trevor Clark, CHP Officer, CIIT Investigator
22. Carlos Marroquin, CHP Officer, CIIT Investigator
23. John Kolter, CHP Sergeant, Central Division's Multidisciplinary Accident Investigation Team (MAIT) Team Leader
24. Michael Bright, CHP Officer, MAIT Investigator
25. B. Munoz, CHP Officer, MAIT Investigator

26. J. Machado, CHP Officer, MAIT Investigator
27. R. Shaw, CHP Officer, MAIT Investigator
28. Bill Ward, Madera County Sheriff's Office (MCSO) Commander, County of Madera Sheriff's Office
29. Tyson Pogue, MCSO Commander, County of Madera Sheriff's Office
30. Robert Mollet, MCSO Sergeant, County of Madera Sheriff's Office
31. Daniel Kerber, MCSO Sergeant, County of Madera Sheriff's Office
32. John Grayson, MCSO Detective, County of Madera Sheriff's Office
33. Luis Padgett, MCSO Detective, County of Madera Sheriff's Office
34. Jose Villafan, MCSO Deputy, County of Madera Sheriff's Office
35. Jose Iniguez, MCSO Deputy, County of Madera Sheriff's Office
36. Isaac Hare, MCSO Deputy
37. Ryan Vermeulen, MCSO Deputy, County of Madera Sheriff's Office
38. Miguel Hernandez, MCSO Deputy, County of Madera Sheriff's Office
39. Daniella Romero, MCSO Identification Technician, County of Madera Sheriff's Office
40. Brian Hieger, MSCO Reserve Deputy, County of Madera Sheriff's Office
41. Rene Galindo, Branch & Vine Event Center patron
42. Stevan C. Ramirez, Branch & Vine Event Center patron
43. Luis M. Huaracha, Branch & Vine Event Center patron
44. Salvador Gonzales, III, Branch & Vine Event Center patron
45. Jaime Gonzales, Branch & Vine Event Center patron
46. Julian Gonzales, Branch & Vine Event Center patron
47. Fernando Ramirez, Branch & Vine Event Center patron
48. Sara Grendahl, Carjacking Victim
49. Carson Allen, Carjacking Victim

**ATTACHMENT C: Joint Exhibits**

| Ex. | Description |
|---|---|
| A. | CHP Air Ops A17-240 Video (AG004276) |
| B. | CHP Mobile Video Audio Recording System (MVARS) of Officer Efrain Jimenez (AG004261-62) |
| C. | CHP MVARS of Officer Scott Jobinger #1 (AG004263-67) |
| D. | CHP MVARS of Officer Scott Jobinger #2 (AG004270) |
| E. | CHP MVARS of Officer J. Yates (AG004274-75) |
| F. | CHP MVARS of Officer Shandara Kensey (AG004296-97) |
| G. | CHP MVARS of Officer Isaac Martinez (AG004272-73) |
| H. | Video taken by Percipient Witness Julian Gonzales (AG004307) |
| I. | Videos taken by Percipient Witness Fernando Ramirez (AG004305-06) |
| J. | MAIT Evidence Overview Diagram (AG000092) |
| K. | MAIT Physical Evidence Diagram (AG000093) |
| L. | MAIT Detail Diagram (AG000094) |
| M. | Dispatch Recording (AG004138) |
| N. | Madera County Sheriff's Office Photographs: AG003594-AG003596, AG003603, AG003609, AG003611, AG003767-AG003772 |
| O. | Video Interview of Officer Shandara Kensey 1 of 2 (AG004146) (ID Only) |
| P. | Video Interview of Officer Shandara Kensey 2 of 2 (AG004147) (ID Only) |
| Q. | Audio Interview of Officer Shandara Kensey (AG004148) (ID Only) |
| R. | Audio Interview of Officer Shandara Kensey (AG004149) (ID Only) |
| S. | Video Interview of Officer Isaac Martinez (AG004150) (ID Only) |
| T. | Video Interview of Officer Isaac Martinez (AG004151) (ID Only) |
| U. | Video Interview of Officer Isaac Martinez (AG004152) (ID Only) |
| V. | Audio Interview of Officer Isaac Martinez (AG004153) (ID Only) |

| | |
|---|---|
| W. | Audio Interview of Officer Isaac Martinez (AG004154) (ID Only) |
| X. | Video Interview of Officer Scott Jobinger (AG004158) (ID Only) |
| Y. | Video Interview of Officer Scott Jobinger (AG004159) (ID Only) |
| Z. | Video Interview of Officer Scott Jobinger (AG004160) (ID Only) |
| AA. | Audio Interview of Officer Scott Jobinger (AG004157) (ID Only) |
| BB. | Video Interview of Officer Efrain Jimenez (AG004162) (ID Only) |
| CC. | Video Interview of Officer Efrain Jimenez (AG004163) (ID Only) |
| DD. | Video Interview of Officer Efrain Jimenez (AG004164) (ID Only) |
| EE. | Audio Interview of Officer Efrain Jimenez (AG004165) (ID Only) |
| FF. | Video Interview of Officer Efrain Jimenez (AG004167) (ID Only) |
| GG. | Video Interview of Officer Efrain Jimenez (AG004168) (ID Only) |
| HH. | Video Interview of Officer Efrain Jimenez (AG004169) (ID Only) |
| II. | Audio Interview of Officer Efrain Jimenez (AG004170) (ID Only) |
| JJ. | Transcript of Interview of Officer Efrain Jimenez (AG000041-72) (ID Only) |
| KK. | Audio Interview of Luis M. Huaracha (AG004128) (ID Only) |
| LL. | Audio Interview of Julian Gonzales (AG004362) (ID Only) |

**ATTACHMENT D: Plaintiff's Exhibits**

| Ex. | Description |
|---|---|
| 1. | CHP Air Ops A17-240 Video (AG004276) |
| 2. | CHP Air Ops A17-242 Video (AG004294) |
| 3. | CHP MVARS of Officer Efrain Jimenez (AG004261-62) |
| 4. | CHP MVARS of Officer Scott Jobinger #1 (AG004263-67) |
| 5. | CHP MVARS of Officer Scott Jobinger #2 (AG004270) |
| 6. | CHP MVARS of Officer J. Yates (AG004274-75) |
| 7. | CHP MVARS of Officer Shandara Kensey (AG004296-97) |
| 8. | Video taken by Percipient Witness Julian Gonzales (AG004307) |
| 9. | Videos taken by Percipient Witness Fernando Ramirez (AG004305-06) |
| 10. | Video Interview of Officer Shandara Kensey 1 of 2 (AG004146) (ID Only) |
| 11. | Video Interview of Officer Shandara Kensey 2 of 2 (AG004147) (ID Only) |
| 12. | Audio Interview of Officer Shandara Kensey (AG004148) (ID Only) |
| 13. | Audio Interview of Officer Shandara Kensey (AG004149) (ID Only) |
| 14. | Video Interview of Officer Isaac Martinez (AG004150) (ID Only) |
| 15. | Video Interview of Officer Isaac Martinez (AG004151) (ID Only) |
| 16. | Video Interview of Officer Isaac Martinez (AG004152) (ID Only) |
| 17. | Audio Interview of Officer Isaac Martinez (AG004153) (ID Only) |
| 18. | Audio Interview of Officer Isaac Martinez (AG004154) (ID Only) |
| 19. | Video Interview of Officer Scott Jobinger (AG004158) (ID Only) |
| 20. | Video Interview of Officer Scott Jobinger (AG004159) (ID Only) |
| 21. | Video Interview of Officer Scott Jobinger (AG004160) (ID Only) |
| 22. | Audio Interview of Officer Scott Jobinger (AG004157) (ID Only) |
| 23. | Video Interview of Officer Efrain Jimenez (AG004162) (ID Only) |
| 24. | Video Interview of Officer Efrain Jimenez (AG004163) (ID Only) |

| | |
|---|---|
| 25. | Video Interview of Officer Efrain Jimenez (AG004164) (ID Only) |
| 26. | Audio Interview of Officer Efrain Jimenez (AG004165) (ID Only) |
| 27. | Video Interview of Officer Efrain Jimenez (AG004167) (ID Only) |
| 28. | Video Interview of Officer Efrain Jimenez (AG004168) (ID Only) |
| 29. | Video Interview of Officer Efrain Jimenez (AG004169) (ID Only) |
| 30. | Audio Interview of Officer Efrain Jimenez (AG004170) (ID Only) |
| 31. | Transcript of Interview of Officer Efrain Jimenez (AG000041-72) (ID Only) |
| 32. | Audio Interview of Luis M. Huaracha (AG004128) (ID Only) |
| 33. | Audio Interview of Julian Gonzales (AG004362) (ID Only) |
| 34. | MAIT Evidence Overview Diagram (AG000092) |
| 35. | MAIT Physical Evidence Diagram (AG000093) |
| 36. | MAIT Detail Diagram (AG000094) |
| 37. | Dispatch Recording (AG004138) |
| 38. | Autopsy of Santana Juarez Gonzalez (AG003870-78) |
| 39. | DashCam SloMo.mov (P000253) |
| 40. | Hand held still.mov (P000254) |
| 41. | Hand Held2zzoom.tiff (P000255) |
| 42. | Panos ClipB.jpg (P000256) |
| 43. | Panos Still 1.jpg (P000257) |
| 44. | Panos Still 2.jpg (P000258) |
| 45. | Panos Still 3.jpg (P000259) |
| 46. | Panos Still 4.jpg (P000260) |
| 47. | Panos Still Clips.jpg (P000261) |
| 48. | Madera County Sheriff's Office Photographs (AG003594-AG003596, AG003603, AG003609, AG003611, AG003767-AG003772, AG003825-AG003840, AG004289-AG004290) |
| 49. | Photographs taken by Plaintiff's counsel, Panos Lagos, on/about 2/12/2021 (P000253- |

| | |
|---|---|
| | P000261) |
| 50. | Twelve (12) annotated screen shots by Plaintiff's counsel, Panos Lagos (ECF No. 78-4, pp. 43-54) |
| 51. | Four (4) annotated screen shots by Plaintiff's counsel, Panos Lagos (ECF No. 78-4, pp. 56-59) |
| 52. | DOCS_Disk 1 of 8_AG000001-AG004139 |
| 53. | DOCS_Disk 2 of 8 AG004140-AG004157 |
| 54. | DOCS_Disk 3 of 8 AG004158-AG004162 |
| 55. | DOCS_Disk 4 of 8 AG004163-AG004262 |
| 56. | DOCS_Disk 5 of 8 AG004263-AG004267 |
| 57. | DOCS_Disk 6 of 8 AG004268-AG004269 |
| 58. | DOCS_Disk 7 of 8 AG004270-AG004272 |
| 59. | DOCS_Disk 8 of 8 AG004273-AG004304 |
| 60. | DOCS_Supp_AG004305-AG004307 |
| 61. | DOCS_Supp_AG004308-AG004319 |
| 62. | DOCS_Supp_AG004320-AG004330 |
| 63. | DOCS_Supp_AG004331-AG004345 |
| 64. | DOCS_Supp_AG004346-AG004356 |
| 65. | DOCS_Supp_AG004356-AG004362 |
| 66. | DOCS_Supp_AG004363-AG004381 |
| 67. | DOCS_Supp_AG004382 |

**ATTACHMENT E: Defendant Jimenez's Exhibits**

| Ex. | Description |
|---|---|
| A. | Incident Detail Report (CAD) No. 170820MR00327 (AG00015 to AG00168) |
| B. | CHP AirOps A17-240 Select Photographs (AG004172 to AG004175, AG004187, AG004226) |
| C. | MVARS Recording for Officer Isaac Martinez (AG004272 to AG004273) **REMOVE IF JOINT** |
| D. | Radio Traffic Recordings (AG004259) |
| E. | Select Crime Scene Photographs by MCSO (AG003748 to AG003869, AG004022 to AG004027, AG004029 to AG004120, AG004133 to AG004137) |
| F. | Chevron Gas Station Surveillance Footage (AG004140, AG004141, AG004139, AG004140, AG004312, AG004315, AG004318, AG004320, AG004341, AG004343, AG004344) |
| G. | Audio Interview of Rene Galindo (AG004129) |
| H. | Audio Interview of Stevan C. Ramirez (AG004131) |
| I. | Audio Interview of Salvador Gonzales (AG004130) |
| J. | Audio Interview of Jaime Gonzales (AG004125) |
| K. | Audio Interview of Fernando Ramirez (AG004124) |
| L. | Audio Interview of Sara Grendahl (AG004028) |
| M. | Audio Interview of Carson Allen (AG004028) |
| N. | Clarance Chapman's Curriculum Vitae |
| O. | Clarance Chapman's Expert Report |
| P. | Clarance Chapman's Rebuttal/Supplemental Expert Report |
| Q. | Multidisciplinary Accident Investigation Team (MAIT) Narrative/Diagram (AG000509 to AG000530) & Select Photographs (AG000553 to AG003747) |
| R. | Plaintiff J.A.J.'s Responses to Defendant Efrain Jimenez's Interrogatories, Set One |

| | |
|---|---|
| S. | Plaintiff J.A.J.'s Responses to Defendant Efrain Jimenez's Request for Admissions, Set One |