**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
E-mail: dalekgalipo@yahoo.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333; Fax: (818) 347-4118

**Panos Lagos, Esq. / SBN 61821**
**LAW OFFICES OF PANOS LAGOS**
6569 Glen Oaks Way
Oakland, CA 94611
510.530.4078
510.530.4725 (FAX)
E-mail: panos@panoslagoslaw.com

**Sanjay S. Schmidt (SBN 247475)**
**LAW OFFICE OF SANJAY S. SCHMIDT**
1388 Sutter Street, Suite 810
San Francisco, CA 94109
Tel. (415) 563-8583
Fax (415) 223-9717
Email: ss@sanjayschmidtlaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSHUA A. JUAREZ, individually and as successor in interest to SANTANA JUAREZ GONZALEZ, Deceased;<br><br>Plaintiff,<br><br>v.<br><br>State of California Highway Patrol Officer EFRAIN JIMENEZ (ID#18075), individually; A;J, a minor, through her mother and Next Friend, SELENE RAMOS, individually and as successor in interest for SANTANA JUAREZ GONZALEZ, Deceased; and DOES 1 to 100, jointly and severally;<br><br>Defendants. | Case No. 1:18-cv-01138-KES-EGC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 2 TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF DEFENSE POLICE PRACTICES EXPERT CLARENCE CHAPMAN** |

**TO THE HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN**:

**PLEASE TAKE NOTICE** that Plaintiff Joshua A. Juarez hereby moves the Court, by way of this Motion in Limine No. 2, to exclude Defendant from introducing evidence, argument, or references to certain opinions and testimony from Clarence Chapman, Defendant Jimenez's police practices expert,. Plaintiff makes this Motion under Federal Rules of Evidence 104(a), 401–404, and 702–704, as to the opinions in Mr. Chapman's Rule 26 Report and his Rebuttal/Supplemental Report. This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Sanjay S. Schmidt and the exhibits thereto, the records and files in this action, and any argument presented at the hearing on this Motion.

DATED: October 2, 2026

LAW OFFICES OF DALE K. GALIPO
LAW OFFICES OF PANOS LAGOS
LAW OFFICE OF SANJAY S. SCHMIDT

By: */s/ Sanjay S. Schmidt*
Dale K. Galipo
Panos Lagos
Sanjay S. Schmidt
Attorneys for Plaintiff Joshua A. Juarez

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This civil rights case arises out of the officer-involved shooting death of Santana Juarez Gonzalez on August 20, 2017, by California Highway Patrol Officer Efrain Jimenez. Defendants have retained police practices expert Clarence Chapman to offer opinions regarding the involved officers' conduct and tactics, and Officer Jimenez's use of force. By way of this motion in limine, Plaintiff moves to preclude Mr. Chapman from offering improper opinions/testimony that are improper legal conclusions, speculative and not based on any evidence or witness testimony, are outside the scope of his expertise, misstate the governing legal standard, improperly vouch for Officer Jimenez or attack the decedent's character, and/or are otherwise improper and/or not helpful to the trier of fact at trial.

## II. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. When determining the admissibility of expert testimony, a district court's role under Rule 702 is not to be a "fact finder" but a "gatekeeper." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) (quotation marks omitted). The district court has a "gatekeeping role" to screen expert testimony, and judges have discretion to determine whether such testimony is admissible, depending on its reliability and relevance. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-97 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). To fulfill its role as gatekeeper, a district court must "ensure that the testimony is both relevant and reliable" before it deems such testimony admissible. *United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020) (cleaned up). "[T]he law grants the [court] broad latitude" in analyzing and determining the reliability of proffered expert witness testimony. *Kumho*, 526 U.S. at 139, 142. "The inquiry

[under Rule 702] is a flexible one[,]" and its focus "must be solely on principles and methodology, not on the conclusions [the expert] generate[s]." *Daubert*, 509 U.S. at 594–95.

The 2023 amendments to Federal Rule of Evidence 702 "emphasize that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology[,]" in recognition of the fact that "[j]udicial gatekeeping is essential because just as jurors may be unable, due to lack of specialized knowledge, to evaluate meaningfully the reliability of scientific and other methods underlying expert opinion, jurors may also lack the specialized knowledge to determine whether the conclusions of an expert go beyond what the expert's basis and methodology may reliably support." Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

Reliability is determined by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid"; whereas, relevance depends upon "whether [that] reasoning or methodology properly can be applied to the facts in issue." *Daubert*. at 592–593. "[A]ny step that renders the analysis unreliable…renders the expert's testimony inadmissible." *In re Paoli R.R. Yard PC Litig.*, 35 F.3d 717, 745 (3rd Cir. 1994). Consequently, the Court may exclude an expert's opinions based on an obvious mistake in the expert's investigation or reasoning process, *see E.E.O.C. v. Freeman*, 778 F.3d 463, 467 (4th Cir. 2015), when there are analytical gaps between the data and the opinion, *Conde v. Velsicol Chem. Corp.*, 24 F.3d 809 (6th Cir. 1994), or where the opinion is purely speculative, *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 250 (6th Cir. 2001), among other flaws.

Ultimately, Defendants have the burden of laying the proper foundation for the admission of their police practices expert's opinions and must establish that it meets the stringent requirements of Rule 702 by a preponderance of evidence. *Daubert*, 509 U.S. at 592–93; *Lust v. Merrell Dow Pharm., Inc.*, 89 F. 3d 594, 598 (9th Cir. 1996). When objections are made, the Court must make a preliminary determination regarding the qualifications of the person attempting to offer such evidence and the admissibility of such opinions. Fed. Rule Evid. 104(a); Fed. Rule Evid. 702 advisory committee's notes to 2000 and 2023 amendments.

//

## III. ARGUMENT

### A. Mr. Chapman's Improper Legal Conclusions Should Be Excluded

An expert may not provide testimony that amounts to a "legal conclusion[] as to the ultimate issues in the case." *Torres v. City of L.A.*, 548 F.3d 1197, 1214 n.11 (9th Cir. 2008); Reasonableness is quintessentially a jury question. The Ninth Circuit has "repeatedly affirmed that 'an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law.'" *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (quoting *Hangarter v. Provident Life & Accident Ins.*, 373 F.3d 998, 1016 (9th Cir. 2004) (emphasis in *Hangarter)*). The "prohibition of opinion testimony on an ultimate issue of law recognizes that, when an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *Diaz*, 876 F.3d at 1197 (quotation marks omitted) (emphasis in original). "[T]he jury," not an expert, "is best suited to determine the reasonableness of an officer's conduct in light of the factual context in which it takes place." *Sloman v. Tadlock*, 21 F.3d 1462, 1468 (9th Cir. 1994). "In determining what constitutes a legal conclusion, courts may pay special attention to whether the expert uses "legally specialized terms." *Fatai v. Ramos*, No. 19-CV-603-DKW-WRP, 2023 WL 2390573, at *4 (D. Haw. Mar. 7, 2023). "With respect to inadmissible legal opinions, the question is whether the terms used by the expert witness 'have a specialized meaning in law' or 'represent an attempt to instruct the jury on the law, or how to apply the law to the facts of the case….'" *Hyer v. City & Cnty. of Honolulu*, 118 F.4th 1044, 1059 (9th Cir. 2024) (quoting Diaz, 876 F.3d at 1199).

Here, throughout both of his reports, Mr. Chapman repeatedly offers improper legal conclusions regarding the reasonableness of Officer Jimenez's beliefs and actions. *See* Declaration of Sanjay S. Schmidt ("Schmidt Decl."), **Ex. A**, Rule 26 Report of Clarence R. Chapman, dated April 6, 2021 ("Chapman Report"), at 5 ("acted objectively reasonable (sic)), 6 (Jimenez had "reasonable cause" to arrest Juarez; the facts testified to by Officer Jimenez "reasonably established the mind set" that he needed to shoot before Juarez reached the Red Barn), 11 ("[t]his circumstance sufficiently justified Officer Jimenez's objectively reasonable decision to deploy deadly force"). These opinions are improper legal conclusions regarding the ultimate issues in this case, e.g.,

whether it was reasonable for Officer Jimenez to use deadly force. Since reasonableness has a specialized meaning in Fourth Amendment jurisprudence, Mr. Chapman is precluded from offering opinions as to whether Defendant Jimenez or any of the other officers acted reasonably. Thus, Mr. Chapman should be precluded from offering such legal conclusions at trial. *See Est. of Risher v. City of Los Angeles*, No. CV 17-00995-MWF (DTBX), 2025 WL 869028, at *6 (C.D. Cal. Jan. 22, 2025) (excluding similar legal conclusion opinions by police practices expert at trial); *Zuniga v. City of Los Angeles*, No. 2:22-CV-03665-CBM-(ASX), 2024 WL 4744370, at *2–3 (C.D. Cal. Oct. 7, 2024) (same); *Glover v. City of Los Angeles*, No. 2:21-CV-09915-FWS-AS, 2023 WL 8586386, at *4 (C.D. Cal. Oct. 26, 2023) (same); *Taylor v. Lemus*, No. CV 11-9614 FMO (SSX), 2015 WL 12698306, at *6 (C.D. Cal. June 17, 2015) (precluding Mr. Chapman from offering similar opinions).

Mr. Chapman's other opinions are framed in the same legal terms: Officer Jimenez had "no other reasonable options . . . based on the totality of the circumstances" (Opinion #2), acted as "any other reasonably trained peace officer" would (Opinion #4), complied with "federal case law," citing *Graham v. Connor* (Opinion #5 & n.3), and faced a situation "any reasonable officer would justifiably interpret as a deadly threat" (Opinion #6). Chapman Report at 5. He also purports to instruct the jury on the law, stating that "officers must be judged by the standard of 'reasonableness'". *Id.* at 9; *see Hyer*, 118 F.4th at 1059. His "rebuttal/supplemental" report likewise improperly opines that releasing the K-9 – one of the less lethal alternatives available to Defendant Jimenez – would have been "gross negligence" and "a totally improper and unjustified use of force," and that Juarez posed "an immediate threat to public safety." Schmidt Decl., **Ex. B**, Rebuttal/Supplemental Report of Clarence R. Chapman, dated April 19, 2021 ("Rebuttal Report"), at 2–3. These improper opinions – and any other, similar such assertions and opinions – should be excluded for the same reasons.

Indeed, Mr. Chapman acknowledges that he was attempting to apply the law to the facts by analyzing the facts "against the backdrop of . . . the legal standards that those professional standards are based upon." Chapman Report at 1. His reports are accordingly laced with other legally loaded, improper characterizations, including that Juarez "ignored these lawful orders" (*id.* at 7), that Officer

Jimenez faced "an imminent deadly threat created by Juarez" (*id.* at 5), that Juarez had "the present ability" to harm others (*id.* at 11), and that a K-9 deployment would have created an "unreasonable danger to public safety" (Rebuttal Report at 2). These characterizations should be excluded as well.

**B. Unsupported, Inflammatory and Prejudicial Opinions Should Be Excluded**

In his Rule 26 Report, Mr. Chapman makes the following sweeping, unfounded and improper assertions:

> Opinion # 3: The actions and behavior of Juarez constituted the elements of an "active shooter" scenario that justifiably created a mind set in Officer Jimenez that he was being confronted with an armed suspect who threatened the lives of a large group of potential innocent victims.

Chapman Report at 5. Mr. Chapman further cites to POST Learning Domain #23 regarding "Rapid Deployment to Deadly Encounter "Active Shooter," and implies that Officer Jimenez was required to act swiftly and without delay because "[t]he facts of this case clearly represent an imminent threat that jeopardized the safety of the general public." *Id.* at 6-7.

Contrary to Mr. Chapman's assertions, there are no objective facts to justify his opinions that the incident constituted an "active shooter" scenario and that Officer Jimenez appropriately used deadly force because Juarez was an "active shooter." The California Commission on Peace Officer Standards and Training (POST), in Learning Domain 44, "Active Shooter," defines an active shooter as a person who is "actively engaged in a life threatening assault that could result in multiple deaths or serious bodily injury." Schmidt Decl., ¶ 8; Cal. Comm'n on Peace Officer Standards & Training, *Basic Course Workbook Series: Learning Domain 44, Active Shooter* 1-3 (Version 1.0, Apr. 2026). Pursuant to this POST Learning Domain, "[a]ctive shooter incidents are characterized by the use of firearms or other lethal weapons **with the intent to cause mass casualties**." *Id.* (emphasis added). Similarly, California Highway Patrol General Order 100.101, "Active Shooter Response," defines an active shooter as a suspect who is "actively engaged in random or systematic violence, demonstrating their intent to cause death or serious bodily injury to others." Schmidt Decl., ¶ 9; Cal. Highway Patrol, Gen. Order 100.101, *Active Shooter Response* § 2(b)(1), at 1 (rev. May 2024). Contrary to Chapman's assertion, the scenario at issue here clearly did not constitute an "active shooter" scenario.

In this case, Juarez was **not** "**actively engaged**" in a life-threatening assault, he was not using a firearm "with the intent to cause mass casualties", nor was he "actively engaged in random or systematic violence[.[" He was doing anything demonstrating an "intent to cause death or serious bodily injury to others." Juarez's alleged armed carjacking had already been completed and he was, in fact, unarmed. There is no evidence that Juarez pointed a weapon or fired a weapon at anyone during the pursuit. There is no evidence that Juarez ever verbally threatened anyone during the pursuit or ever communicated an intent to harm the general public at large. Additionally, the term "active shooter" generally evokes a strong, emotional response from the audience, and will unquestionably evoke such a response from the jury.

Moreover, these unfounded assertions by Mr. Chapman also invade the province of the jury because whether Juarez posed an imminent threat at the moment deadly force was used is a jury question that this improper opinion seeks to answer. Furthermore, this opinion is tantamount to Mr. Chapman serving as Defendant Jimenez's ventriloquist, vouching to the jury for Jimenez's disputed justification for using deadly force under the imprimatur of "expert" testimony. This is improper. Credibility is a matter for the jury to decide, so "[a]n expert witness is not permitted to testify specifically to a witness' credibility or to testify in such a manner as to improperly buttress a witness' credibility." *United States v. Candioli*, 870 F.2d 496, 506 (9th Cir. 1989). Expert opinions that either evaluate or are necessarily predicated on witness credibility are inadmissible under Rule 702 because they "undertake[] to tell the jury what result to reach" and "substitute the expert's judgment for the jury's" — and are also excludable as improper vouching under Rule 403. *Nimely v. City of New York*, 414 F.3d 381, 397–398 (2d Cir. 2005) (cleaned up) (finding district court's admission of defense expert's "vouching" for veracity of officers in Section 1983 police shooting case to be an abuse of discretion requiring reversal of defense verdict); *United States v. Rivera,* 43 F.3d 1291, 1295 (9th Cir. 1995) ("[A]n expert witness is not permitted to testify specifically to a witness' credibility or to testify in such a manner as to improperly buttress a witness' credibility." (quotation and alteration omitted)); *United States v. Hill*, 749 F.3d 1250, 1260 (10th Cir. 2014) (surveying all federal circuits on the issue of an expert opining on credibility and finding that circuits that have considered it "have uniformly agreed."). Additionally, Mr. Chapman's speculation is also irrelevant

under Rules 401 and 402 and violative of Rule 403.

In sum, the Court should preclude Mr. Chapman's "active shooter" opinions because they are unreliable, unsupported by the evidence, inflammatory, constitute improper vouching, and are unduly prejudicial to Plaintiff.

**C. Speculative State of Mind Opinions Should Be Excluded**

"Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind." *Lanard Toys Ltd. v. Anker Play Prods., LLC*, No. CV 19-4350-RSWL-AFMx, 2020 WL 6873647, at *7 (C.D. Cal. Nov. 12, 2020) (collecting cases). "Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case…[and because t]he jury is sufficiently capable of drawing its own inferences regarding intent, motive or state of mind from the evidence, [] permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and [therefore] would not be helpful to the jury." *Moller v. Cnty. of San Bernardino*, No. 5:22-CV-01306-DSF-MARX, 2024 WL 5185640, at *7 (C.D. Cal. Jan. 2, 2024) (internal citations and quotation marks omitted).

Here, Mr. Chapman attempts to speculate on Officer Jimenez's state of mind throughout his report. For example, Mr. Chapman states California Highway Patrol's policy on the use of deadly force and opines that "Defendant Officer Jimenez complied fully with this policy in his determination that Juarez was armed and was running in the direction of an area heavily populated with innocent citizens who would be subject to serious harm or be taken as hostages." **Ex. A**, Chapman Report at 8. In another section of his report, after listing the factors under the "national standards" for an officer's use of deadly force, Mr. Chapman states, "I found that Defendant Officer Jimenez strictly considered all of the delineated areas in making his decision to use deadly force." *Id.* at 9. These are improper, speculative state of mind opinions that should be excluded at trial.

Just like Mr. Chapman's unfounded and improper "active shooter" assertions discussed above, these improper assertions by Mr. Chapman also invade the province of the jury and would be tantamount to Mr. Chapman vouching for Defendant Jimenez's disputed account to the jury. As noted above, an "expert witness is not permitted to testify specifically to a witness' credibility or to testify in such a manner as to improperly buttress a witness' credibility." *Rivera,* 43 F.3d at 1295

(cleaned up); *Candioli*, 870 F.2d at 506. Mr. Chapman's speculation is also irrelevant under Rules 401 and 402 and violative of Rule 403.

**D. Opinions Based on After-Acquired Findings and Opinions Not Helpful to the Trier of Fact Should Be Excluded**

A number of Mr. Chapman's opinions and contentions must be excluded because only the facts and circumstances known to the officers at the time of their contact with the Decedent are relevant; facts of which officers were unaware "are irrelevant to the reasonableness analysis," *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1123 n.4 (9th Cir. 2021), and may not be considered. *Glenn v. Wash. Cnty.*, 673 F.3d 864, 873 n.8 (9th Cir. 2011) ("We cannot consider evidence of which the officers were unaware—the prohibition against evaluating officers' actions 'with the 20/20 vision of hindsight' cuts both ways.").

Here, Mr. Chapman notes in his report that a firearm was found along the path of the foot pursuit and that after the incident, investigators examined the firearm and found firing pin strikes that indicated there were attempts to fire the weapon at some point in time. Mr. Chapman admits that it is unknown as to when those attempts were made. Chapman Report at 11. Officers involved in the incident testified that they never heard any shots fired prior to Officer Jimenez utilizing deadly force against Juarez and never saw Juarez holding a gun. Accordingly, Mr. Chapman should be precluded from testifying about information that was unknown to the officers, including Officer Jimenez, at the time of the incident and from speculating or implying that Juarez attempted to fire the gun at some point during the foot pursuit. Exclusion is required under Rules 401, 402, 403, and 702.

The same is true of the other after-acquired facts on which Mr. Chapman relies, including the recovered revolver and its duct-taped grip, the ammunition and identification card found after the shooting, and the details of the Chevron surveillance video, including that the carjacking victims "ran from the vehicle in fear for their lives." Chapman Report at 2–3, 8, 10–11. None of these facts was known to Officer Jimenez when he fired, and none may be considered. *Glenn*, 673 F.3d at 873 n.8. Nor does the later recovery of the revolver along the pursuit path establish that Juarez was

armed when he was shot; any testimony suggesting otherwise is speculation that would also create unfair prejudice that should be excluded under Rules 403 and 702.

**E. Opinions Outside the Scope of Mr. Chapman's Expertise Should Be Excluded**

In his report, Mr. Chapman offers improper bullet trajectory opinions that are outside of the scope of his expertise – these opinions are improper attempts to bolster Officer Jimenez's credibility. Specifically, Mr. Chapman states: "The descriptions of [Juarez's gunshot] wound trajectories are consistent with the statements of Officer Jimenez that Juarez was running toward the crowd of citizens at the time the shots were fired." Chapman Report at 10. Mr. Chapman is neither a forensic pathologist nor a bullet trajectory expert. Additionally, the issue of whether Juarez was running toward a crowd of civilians is in dispute in this case. Mr. Chapman should be precluded from offering opinions outside the scope of his expertise that attempt to bolster the credibility of Defendant Jimenez. *Nimely*, 414 F.3d at 397–398 (finding district court's admission of defense expert's "vouching" for and bolstered the account of officers in Section 1983 police shooting case to be an abuse of discretion requiring reversal of defense verdict); *Candioli*, 870 F.2d at 506 (9th Cir. 1989) ("[a]n expert witness is not permitted to testify specifically to a witness' credibility or to testify in such a manner as to improperly buttress a witness' credibility.").

Mr. Chapman further attempts to offer an opinion regarding the "levels of alcohol and methamphetamine" found in Juarez's blood and how they "could have accounted for the violent and resistive nature of Juarez's actions prior to the shooting." Chapman Report at 12. First, the officers did not have any information that Juarez was under the influence of drugs or alcohol, and as discussed in Plaintiff's Motion in Limine No. 1, Defendants concede that such evidence is not relevant to the issue of liability. Additionally, Mr. Chapman is not a toxicologist or medical expert and is not qualified to opine as to the "levels" of alcohol and drugs in Juarez's system and how they could affect his behavior. Accordingly, Mr. Chapman should be precluded from offering any opinions on this topic. *See Wells v. City of Las Vegas*, No. 2:21-CV-1346 JCM (EJY), 2024 WL 2028007, at *5 (D. Nev. May 7, 2024) (excluding medical testimony outside of Chapman's area of expertise). For the same reasons, Mr. Chapman should be precluded from relying on POST Learning Domain #12, "Illegal Substances," which he lists as an exhibit. Chapman Report at 4.

**F. Opinions That Misstate the Governing Legal Standard Should Be Excluded**

Several of Mr. Chapman's opinions rest on incorrect legal standards and would confuse the jury about the law the Court will instruct on. Fed. R. Evid. 403, 702. *First*, Mr. Chapman opines that "there must be a sufficiency of fear in order to justify and support the use of deadly force," and that Juarez's conduct "sufficiently excited fear" in Officer Jimenez. Chapman Report at 11; *see also id.* at 5–6 ("mind set"). The Fourth Amendment inquiry is objective, "without regard to [the officers'] underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). An officer's statement that he feared for his safety or the safety of others "is not enough; there must be objective factors to justify such a concern." *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). These opinions are also improper state of mind opinions, and as explained above, courts "routinely exclude as impermissible expert testimony as to intent, motive, or state of mind." *Lanard Toys Ltd.*, 2020 WL 6873647, at *7 (collecting cases); *Moller*, 2024 WL 5185640, at *7.

Second, Mr. Chapman asserts that "[i]mminent danger is not limited to 'immediate' or 'instantaneous.'" Chapman Report at 7. The federal standard, however, asks whether the suspect posed an "immediate threat to the safety of the officers or others." *Graham*, 490 U.S. at 396. Third, he opines that Officer Jimenez "complied fully" with a CHP policy permitting deadly force "to apprehend" a person believed to have committed an armed felony. Chapman Report at 8. But "[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Fourth, he opines that "the presence of a gun in the possession of a felony suspect" created a situation "any reasonable officer would justifiably interpret as a deadly threat." Chapman Report at 5. Yet officers "may not kill suspects who do not pose an immediate threat to their safety or to the safety of others simply because they are armed." *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997); *see also Hayes v. County of San Diego*, 736 F.3d 1223, 1233 (9th Cir. 2013). Mr. Chapman should be precluded from offering these opinions.

Mr. Chapman then asserts that "[a] person may pose an imminent danger even if they are not at the very moment pointing a weapon at another person," Chapman Report at 7, and he uses that definition to justify shooting Juarez, who never pointed a weapon at anyone and was shot in the

back while running. *Id.* at 10. By disclaiming immediacy, he invites the jury to apply a more permissive standard than the law allows.

Mr. Chapman's reliance on the "apprehension" prong of CHP policy is equally problematic. Mr. Chapman's opinion that Officer Jimenez "complied fully" with a policy authorizing deadly force "to apprehend" disregards the *Garner* limits – as well as limits articulated by numerous other courts – and invites the jury to conclude that the shooting was justified simply because Juarez was fleeing after an earlier armed felony. That invitation is especially improper here, where whether a deadly-force warning was given, and whether one was feasible, are disputed. *See* Section III.H, *infra*. Mr. Chapman must be be precluded from suggesting that the need to apprehend Juarez, or Juarez's status as a suspected armed felon, justified the use of deadly force. That is contrary to the law.

**G. Improper Character Evidence Regarding the Decedent Should Be Excluded**

Mr. Chapman states that, in his experience, wrapping the grip of a firearm in duct tape "is a common practice among career criminals to avoid leaving fingerprints." Chapman Report at 10–11. This statement serves only to brand Juarez a "career criminal." It is improper character evidence, Fed. R. Evid. 404(a)(1); concerns a fact unknown to Officer Jimenez, *Glenn*, 673 F.3d at 873 n.8; rests on anecdote rather than any reliable methodology, Fed. R. Evid. 702(b)–(d); has nothing to do with police practices; and is inflammatory, Fed. R. Evid. 403. It should be excluded, as should any other characterization of Juarez as a criminal. Nor is there any foundation for the opinion: no evidence establishes who wrapped the grip, when, or why.

**H. Other Opinions That Vouch for Officer Jimenez or Resolve Disputed Facts Should Be Excluded**

Mr. Chapman claims that he "did not assign credibility" to any witness and "assumed all facts in this case to be true." Chapman Report at 1. But conflicting accounts cannot all be true, and in practice he adopts Officer Jimenez's version of every disputed fact, including Juarez's "rapid advance . . . toward the crowd of citizens." *Id.* at 9, 11. An opinion built on one party's disputed account is not based on sufficient facts and is not a reliable application of any methodology. Fed. R. Evid. 702(b), (d).

Mr. Chapman also vouches expressly, listing civilian witnesses whose accounts are "consistent with the testimony of Officer Jimenez." Chapman Report at 10. That is precisely what *Candioli* prohibits. 870 F.2d at 506. It is also misleading: those witnesses heard Officer Jimenez yell "stop," not the deadly-force warning he claims he gave. *Id.* at 7 n.5, 10. And as this Court found in its order denying summary judgment to Jimenez, a "reasonable jury could find that it would have been feasible for Jimenez to issue a warning that lethal force would be used if Juarez did not stop or show his hands." ECF No. 99 at 17:15–16. Further, Mr. Chapman improperly attempts to reconcile the officers' conflicting accounts of which pocket Juarez was alleging reaching into by speculating that Juarez was "removing and reinserting the gun in either of his pants pockets," *id.* at 8, and he predicts a "high probability" that Juarez would have taken hostages, without identifying any evidence of such an intent. *Id.* at 6, 8. Mr. Chapman should be precluded from testifying that any witness corroborates Officer Jimenez, from speculating about Juarez's actions or intentions, and from presenting disputed facts as established.

The specifics underscore the problem. Officer Kensey reported a possible gun in Juarez's *left* front pocket, while Officer Jimenez claimed Juarez was struggling to remove an object from his *right* front pocket. Chapman Report at 3, 8. No witness saw Juarez move a gun from one pocket to the other; Mr. Chapman simply invented a scenario that harmonizes the officers' accounts. Likewise, his hostage theory is an unfounded, speculative prediction about a *potential* harm that might have occurred later, not evidence of an immediate threat when Officer Jimenez fired. Speculation of that kind cannot substitute for the "objective factors" the law requires. *Deorle*, 272 F.3d at 1281.

**I. Mr. Chapman May Not Serve as a Conduit for Officer Jimenez's Hearsay**

Much of Mr. Chapman's report recites Officer Jimenez's interview and deposition statements. Chapman Report at 6–8, 12. When offered by Defendant, those statements are hearsay; the exception for an opposing party's statement applies only to statements offered *against* that party. Fed. R. Evid. 801(d)(2). Rule 703 permits disclosure of otherwise inadmissible facts underlying an expert's opinion "only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. Officer Jimenez can testify for himself. Mr.

Chapman's repetition of his account would be cumulative and would improperly bolster his credibility.

Rule 703 thus creates "a presumption against disclosure to the jury of information used as the basis of an expert's opinion and not admissible for any substantive purpose, when that information is offered by the proponent of the expert." Fed. R. Evid. 703 advisory committee's note to 2000 amendment. Defendants cannot overcome that presumption, which applies equally to the out-of-court statements of Officer Kensey and the civilian witnesses that Mr. Chapman's report relays. Chapman Report at 8 nn.6–7, 10 n.9.

**J. Video Narration and Characterizations of Facts as "Undisputed" Should Be Excluded**

The best evidence rule, Fed. R. Evid. 1002, requires an original to prove the content of a writing, and it expressly covers video. Fed. R. Evid. 1001. It is improper for a witness, particularly a police officer, detective, or former police officer to interpret video or still image evidence and "spoon-fed his interpretations of the evidence to the jury." *United States v. Dorsey*, 122 F.4th 850, 855 (9th Cir. 2024) (cleaned up). This is tantamount to allowing the witness to serve as a thirteenth juror. *See Id*. at 858. It is improper under Rule 701, *id*., and that logic applies with equal force to Rule 702. *See also United States v. LaPierre*, 998 F.2d 1460, 1465 (9th Cir. 1993) (excluding officer's identification from surveillance photos as "invading the province of the jury" and finding detective no more likely to identify robbers correctly than the jury).

Here, Mr. Chapman tells the jury what the video evidence shows, including that Juarez "can be seen in the video evidence running toward a group of civilians," and repeatedly labels facts "undisputed." Chapman Report at 9; Rebuttal Report at 2–3. The jury can view the video for itself, and whether Juarez was running toward the gathering at the red barn is a central disputed fact. Mr. Chapman's gloss on the video is improper, inadmissible under the authorities above, *Dorsey* and *LaPierre*, because he is attempting to spoon-feed his own interpretations to the jury, they are not helpful, and, as such, should be excluded. Fed. R. Evid. 403, 702(a); 1002.

**K. Opinions Regarding CHP Policy or Practice Are Irrelevant**

Mr. Chapman's Rebuttal Report opines that he saw no "official, pretextual, or implied policy

or practice by the CHP chain of command of endorsing any dangerous or out of policy tactics." Rebuttal Report at 4. No such claim is before the jury. The CHP is not a party and, as an arm of the State, is not a "person" subject to suit under 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The opinion is irrelevant and would invite the jury to infer that the CHP approved Officer Jimenez's conduct. Fed. R. Evid. 401–403. As such, it is improper and must be excluded.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Motion in Limine No. 2 to Exclude Certain Opinions and Testimony of Defense Police Practices Expert Clarence Chapman.

Specifically, Plaintiff requests an order precluding Mr. Chapman, whether based on his Rule 26 Report or his Rebuttal Report, from: (1) offering legal conclusions, including that Officer Jimenez acted "objectively reasonabl[y]," was "justified," or complied with "federal case law"; (2) instructing the jury on, or misstating, the law, including by suggesting that deadly force may be justified by subjective fear, a non-immediate threat, the need to apprehend, or suspected gun possession alone; (3) characterizing the incident as an "active shooter" scenario; (4) speculating about Officer Jimenez's state of mind or Juarez's intentions or handling of a gun, including any intent to take hostages; (5) vouching for Officer Jimenez or relating his or other witnesses' out-of-court statements; (6) relying on facts unknown to Officer Jimenez when he fired; (7) characterizing Juarez as a "career criminal" or otherwise commenting on his character; (8) offering opinions on bullet trajectories or the effects of alcohol or methamphetamine; (9) narrating the video evidence or characterizing facts as "undisputed"; and (10) addressing any CHP policy or practice endorsing the officers' tactics.

Respectfully Submitted,

DATED: October 2, 2026

LAW OFFICES OF DALE K. GALIPO
LAW OFFICES OF PANOS LAGOS
LAW OFFICE OF SANJAY S. SCHMIDT

By: */s/ Sanjay S. Schmidt*
Dale K. Galipo
Panos Lagos
Sanjay S. Schmidt
Attorneys for Plaintiff Joshua A. Juarez