ROB BONTA, State Bar No. 202668
Attorney General of California
PETER A. MESHOT, State Bar No. 117061
Supervising Deputy Attorney General
DIANA ESQUIVEL, State Bar No. 202954
Deputy Attorney General
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 210-7320
Facsimile: (916) 322-8288
E-mail: Diana.Esquivel@doj.ca.gov
*Attorneys for Defendant Jimenez*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **J.A.J., et al.,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**EFRAIN JIMENEZ,**<br><br>Defendant. | No. 1:18-cv-01138-DAD-SKO<br><br>**DEFENDANT'S REBUTTAL/ SUPPLEMENTAL REPORT OF EXPERT WITNESS**<br><br>Judge: Hon. Dale A. Drozd<br>Trial Date: January 4, 2022<br>Action Filed: August 22, 2018 |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Under Federal Rule of Civil Procedure 26(a)(2)(D)(ii) and March 30, 2021 Order (ECF No. 52), Defendant Jimenez serves the attached rebuttal/supplemental report of Clarence R. Chapman.

Dated: April 23, 2021

Respectfully submitted,

ROB BONTA
Attorney General of California
PETER A. MESHOT
Supervising Deputy Attorney General

***/s/ Diana Esquivel***

DIANA ESQUIVEL
Deputy Attorney General
*Attorneys for Defendant Jimenez*

SA2018302522
35042049.docx

NATIONAL JUSTICE CONSULTANTS, INC.
1507 7th Street, Suite 350, Santa Monica, CA 90401 ○ 310.429.2940 ○ crchapman@earthlink.net

Ms. Diana Esquivel, DAG
Offices of California Attorney General
1300 I Street, Suite 125
Sacramento, California 94244-2550

Federal Rule of Civil Procedure 26(a)(2)(B)
SUPPLEMENTAL REPORT OF DEFENDANT'S POLICE PRACTICES EXPERT

**Re: *J.A.J., et al. vs. California Highway Patrol Officer Jimenez, et al.***
**United States District Court Case No.: 1:18-cv-01138-DAD-SKO**

Dear Ms. Esquivel:

The following is a rebuttal report in response to the opinions listed in the report of the plaintiffs' police practices expert, Roger A. Clark, dated April 7, 2021, with regard to the actions of the California Highway Patrol (*hereinafter CHP*) officers in the use of deadly force involving Santana Juarez on August 20, 2017.

I. Case Materials Considered in Forming Opinions:
1. Report of Plaintiffs' Police Practices Expert Roger Clark
2. Plaintiffs' First Amended Complaint For Damages and Demand for Jury Trial
3. Madera County Sheriff's Department Incident Report: 17003657
4. CHP Air Ops Video
5. Chevron Phone Calls 08202017
6. 911 Dispatch Calls
7. Interview of CHP Officer Efrain Jimenez
8. Interview of CHP Officer Scott Jobinger
9. Interview of CHP Officer Shandara Kensey, Volume I
10. Interview of Julian Gonzales
11. Interview of Rene Galindo
12. Interview of Fernando Ramirez
13. Interview of Isaac Martinez, Volume I
14. Interview of Isaac Martinez, Volume II
15. Interview of CHP Officer Shandara Kensey, Volume II
16. Deposition of Rene Galindo, dated February 4, 2021
17. Deposition of Julian Gonzales, dated February 4, 2021
18. Deposition of Efrain Jimenez, dated January 22, 2021
19. Deposition of Officer Shandara Kensey, dated February 25, 2021
20. Deposition of Officer Isaac Martinez, dated February 26, 2021
21. Deposition of Officer Scott Jobinger, dated March 26, 2021
22. Deposition of Witness Luis Huaracha, dated March 17, 2921

II. <u>Statement of Supplemental Opinions and Basis and Reasons therefor</u>:

A. Based on my review of Mr. Clark's Report, I submit the following rebuttals to his opinions:

1. In Mr. Clark's first and third opinions he is overly critical of the tactical conduct and decisions of the CHP officers for not providing for the employment of non-lethal options to apprehend Santana Juarez. Clark specifically identifies Officer Kensey's police K-9 as a non-lethal means that was not properly utilized. However, CHP K-9 handler Officer Shandara Kensey in his deposition testimony disputes Clark's criticism in this regard, stating that he would not send an off-leash uncontrolled K-9 on a command to bite and apprehend when he has no visual contact with the dog and no knowledge of the precise whereabouts of the suspect. Specifically, Officer Kensey testified that a K-9 would not be an appropriate deployment because without the handler being present in physical control of the dog, there is no way to know if an innocent person would become the dog's unintended focus and target. Additionally, Officer Kensey stated that a K-9 is not going to stop biting a target until the canine handler commands the dog to release.[1] This is especially critical if the distance between the handler and the K-9 is too great for verbal commands to be heard and obeyed.

2. Moreover, as a former chief of police and having managed a police K-9 unit for over a decade, it is my opinion that if a K-9 officer released a police dog without a specific identified target, and the dog proceeded to attack an innocent person, that officer would be severely disciplined for gross negligence of K-9 policy, training, tactics and best practices. In this case it is undisputed that Santana Juarez was running through an open orchard field consisting of varying elevations that periodically obstructed the pursuing officers' ability to maintain visual contact as he fled. Thus, a K-9 handler would have no control over his dog if an unsuspecting person might happen to venture into the fields at any given time and become the target of the dog. Therefore, in opposing to Mr. Clark's opinions in this area, it is my opinion that the release of an uncontrolled canine on a command to bite and apprehend into a publicly accessible agricultural field would constitute a totally improper and unjustified use of force by creating a significant out of policy and unreasonable danger to public safety.

---

[1] Deposition of CHP Officer Kensey, page 142, lines 8 – 25.

3. In Mr. Clark's second opinion, he criticizes the collective failure of the CHP officers, particularly Officer Jimenez, for failure to use or create tactical cover when he encountered Santana Juarez. However, based on the CHP aircraft video evidence in this case, by the time Officer Jimenez located and acquired visual contact on Santana Juarez there was no opportunity or available environment in which to take effective cover. Moreover, it is undisputed that Santana Juarez was the person choosing and controlling the path of the foot pursuit. Therefore, it was not possible for the CHP officers to strategically predict or plan for where they would be at any time during the pursuit. Ultimately, Santana Juarez can be seen in the video evidence running toward a group of civilians assembled at a location directly in his path. This presented an immediate threat to public safety wherein Officer Jimenez did not have the option or ability to seek cover prior to protecting the safety of innocent people.[2]

4. Mr. Clark's equation of **cover** plus **distance** equals **time** ($c+d=t$) is not applicable in this situation in addition to not existing in CHP policy or POST training. Specifically, it is undisputed that Santana Juarez was constantly moving and changing direction as he was running from the officers as evidenced by the CHP aircraft video in addition to the location of discarded items at various places along the path of the foot pursuit. Therefore, "cover" serves no purpose when the suspect is leading officers on a dynamic and fluid foot chase. Most relevant in this situation and counter to Mr. Clark's criticism herein, is that there was nothing present or viable in the orchard fields that would fit the definition of cover as defined in POST training.[3] Also, for the same reason, "distance" could not be a factor because Santana Juarez was never in a stationary location where distance could be used to factor into a tactical calculation. Also, the element of "time" was of no tactical relevance in this case because Santana Juarez never stopped running, and therefore, the officers could not use a

[2] POST LD #23, Crimes in Progress, Chapter 2: Basic Tactical Considerations, page 2-11 states," *Although officer safety is always a chief concern, there are circumstances where officers must consider placing their safety in jeopardy to protect the innocent. The community has a right to expect that peace officers will "step into harm's way" on behalf of those endangered by violent crime. While obviously officers should not sacrifice their safety merely to apprehend a suspect, their ultimate duty is to protect others."*

[3] POST LD #23, Crimes in Progress, Chapter 2: Basic Tactical Considerations, page 2-6 defines cover as anything that may stop or deflect an opponent's bullets.

specific point in time in which to plan for de-escalation or any attempt to negotiate with Santana Juarez. Therefore, Mr. Clark's subjective "equation" of $c+d=t$, would be totally impractical, ineffective, and impossible based on the facts of this case.

5. Also, in his second opinion, Mr. Clark asserts that there were other alternative means available to the CHP officers in which to take Santana Juarez into custody such as the use of a police baton, Taser, OC spray, and a bean bag shotgun. However, the use of a police baton would be totally impractical due to the fact that the officers believed that Santana Juarez was armed with a gun, in addition to the fact that at no point were the officers in close enough proximity to Santana Juarez to use a baton. Also, according to all training and user certification, a Taser device is not an effective tool to deploy when a suspect is running away from an officer when proper distance and probe spread cannot be effectively calculated. For the same reasons, OC spray by training and policy is not a proper force option to deploy when attempting to apprehend an armed suspect.[4] Moreover, bean bag shotguns are not appropriate, and like a Taser device are not recommended by training or policy to be used in circumstances when officers believe that they are confronting a suspect armed with a firearm.

6. In regard to Mr. Clark's fourth opinion, I did not see any evidence of an official, pretextual, or implied policy or practice by the CHP chain of command of endorsing any dangerous or out of policy tactics used by any of the involved CHP officers. The events of this case represent a rapidly evolving and dynamic situation that involved police officers pursuing an armed and dangerous suspect who threatened the lives and safety of innocent civilians. Additionally, there is no evidence that any of the tactics deployed by the CHP officers were inappropriate under POST training standards and nationally recognized best practices in the use of deadly force when confronting an armed and dangerous suspect.

[4] HPM Policy 70.6. Chapter 26, page 26-2 d. (2) states, "Officers are cautioned that the deployment of OC spray against an armed attacker is extremely dangerous. It may not incapacitate quickly enough to prevent injury to the officer."

7. Contrary to Mr. Clark's fifth opinion there was no necessity to stop and converge on the dirt access road to formulate a plan prior to entering the orchard fields to pursue Santana Juarez. In this case, the CHP officers were receiving adequate and reliable real time information broadcasted from the overhead CHP aircraft via their radio communications that was constantly reporting Santana Juarez's direction, location and actions as he ran from the officers.

III. Qualifications:

Previously set forth in my original report.

IV. Compensation:

Previously set forth in my original report.

V. Experience:

Previously set forth in my original report.

Executed this 19th day of April 2021, in Los Angeles County, California.

Clarence Robert Chapman

# DECLARATION OF SERVICE BY ELECTRONIC MAIL

Case Name: *J.A.J., et al. v. Jimenez*
No.: 1:18-cv-1138 DAD-SKO

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **April 23, 2021**, I served the attached

**DEFENDANT'S REBUTTAL/SUPPLEMENTAL REPORT OF EXPERT WITNESS**

by electronically transmitting a true copy in PDF format to the following:

Panos Lagos, Esq.
LAW OFFICES OF PANOS LAGOS
5032 Woodminster Lane
Oakland, CA 94602-2614
Tel: (510) 530-4078
Fax: (510) 530-4725
E-mail: panos@panoslagoslaw.com

Sanjay S. Schmidt, Esq.
LAW OFFICE OF SANJAY S. SCHMIDT
1388 Sutter Street, Suite 810
San Francisco, CA 94109
Tel: (415) 563-8583
Fax: (415) 223-9717
E-mail: ss@sanjayschmidtlaw.com

*Attorneys for Plaintiffs, J. A. J. and TERESA GONZALEZ-VELAZQUEZ*

I declare under penalty of perjury under the laws of the United States and the State of California the foregoing is true and correct and that this declaration was executed on April 23, 2021, at Sacramento, California.

| D. Esquivel | ***/s/ D. Esquivel*** |
|---|---|
| Declarant | Signature |