**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
E-mail: dalekgalipo@yahoo.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333; Fax: (818) 347-4118

**Panos Lagos, Esq. / SBN 61821**
**LAW OFFICES OF PANOS LAGOS**
6569 Glen Oaks Way
Oakland, CA 94611
510.530.4078
510.530.4725 (FAX)
E-mail: panos@panoslagoslaw.com

**Sanjay S. Schmidt (SBN 247475)**
**LAW OFFICE OF SANJAY S. SCHMIDT**
1388 Sutter Street, Suite 810
San Francisco, CA 94109
Tel. (415) 563-8583
Fax (415) 223-9717
Email: ss@sanjayschmidtlaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

JOSHUA A. JUAREZ, individually and as successor in interest to SANTANA JUAREZ GONZALEZ, Deceased;

Plaintiff,

v.

State of California Highway Patrol Officer EFRAIN JIMENEZ (ID#18075), individually; A;J, a minor, through her mother and Next Friend, SELENE RAMOS, individually and as successor in interest for SANTANA JUAREZ GONZALEZ, Deceased; and DOES 1 to 100, jointly and severally;

Defendants.

Case No. 1:18-cv-01138-KES-EGC

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 4 TO EXCLUDE OR LIMIT EXPERT TESTIMONY [ECF No. 121]**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Defendant's Motion in Limine No. 4, ECF No. 121,[1] asks the Court to (1) limit Plaintiff's experts to the opinions disclosed in their reports and deposition testimony, and (2) exclude portions of the testimony of Plaintiff's police practices expert, Roger Clark. Plaintiff has asked the Court to hold Defendant's police practices expert, Clarence Chapman, to the same rules of evidence. Pl.'s Mot. in Limine No. 2, ECF No. 116. Plaintiff applies those rules evenhandedly here. Plaintiff agrees that every expert, including Mr. Chapman, should be limited to the opinions fairly disclosed in his report and, if deposed, in their deposition; that neither side's expert should use legal terms of art such as "justified," "justifiable," "excessive," or "objectively reasonable," or tell the jury what the law requires; and that Mr. Clark will not offer his Opinion 4 regarding the California Highway Patrol ("CHP") chain of command, just as Mr. Chapman should not offer his corresponding rebuttal opinion.

What Plaintiff opposes is Defendant's effort to convert those narrow, legitimate limits into a wholesale exclusion of the substance of Mr. Clark's testimony. Mr. Clark's core opinions are that POST and CHP training required Officer Jimenez to use cover, distance, time, communication, and the less-lethal alternatives available to him, including a K-9 that was on scene and ready to deploy, before resorting to deadly force against a man he never saw holding a gun, and that Officer Jimenez's tactical decisions were contrary to accepted police practices. That is classic, admissible police practices testimony. Defendant's remaining argument, that Mr. Clark's opinion is "contrary to law," is a merits argument this Court has already rejected in denying summary judgment, and it goes, at most, to the weight, not admissibility of the evidence. Finally, there is no basis for any order regarding Dr. Mark Super, the forensic pathologist who performed the autopsy, beyond confirming that he will testify within the scope of his disclosed autopsy findings.

//

//

[1] Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

## II. <u>LEGAL STANDARD</u>

The proponent of expert testimony must establish by a preponderance of the evidence that it satisfies Rule 702. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993). The Court's gatekeeping role is to "ensure that the testimony is both relevant and reliable." *United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020) (cleaned up). An expert may not offer "an opinion on an ultimate issue of law." *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)). The question is whether the terms used by the expert "have a specialized meaning in law" or "represent an attempt to instruct the jury on the law, or how to apply the law to the facts of the case." *Hyer v. City & Cnty. of Honolulu*, 118 F.4th 1044, 1059 (9th Cir. 2024) (quoting *Diaz*, 876 F.3d at 1199). But an opinion "is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a).

Expert testimony that a party's conduct deviated from the standards and practices of the relevant field is admissible even though it bears on the question the jury must ultimately decide. *See Hangarter*, 373 F.3d at 1016–17 (affirming admission of expert testimony that the defendant deviated from industry standards). "[A] police practices expert [] and a forensic pathologist [] may provide helpful testimony ... without veering into improper legal opinions." *Hyer*, 118 F.4th at 1059 (cleaned up). And "[e]xpert testimony regarding less intrusive alternatives and standards for well-trained officers are regularly relied upon to demonstrate the range of reasonable methods used by officers." *Ochoa v. Cnty. of Kern*, 628 F. Supp. 3d 1006, 1016 (E.D. Cal. 2022) (citing *Chien Van Bui v. City & Cnty. of San Francisco*, 699 F. App'x 614, 615 (9th Cir. 2017) (holding the "expert testimony regarding specific less-intrusive methods of subduing [plaintiff]" could support the conclusion that the officers applied unreasonable force); *Colbert v. County of Kern*, 2015 WL 8214204, at *2 (E.D. Cal. Dec. 8, 2015) (allowing plaintiff's expert to testify as to the "forceful alternatives" available to the officers and what "reasonably well-trained officers are taught regarding when they may use force").

In excessive force cases, an officer's training and the availability of alternatives are relevant to the jury's assessment of reasonableness. *See Drummond ex rel. Drummond v. City of Anaheim*,

343 F.3d 1052, 1059, 1062 (9th Cir. 2003) (police training materials relevant to whether the force used was objectively unreasonable); *Glenn v. Wash. Cnty.*, 673 F.3d 864, 876 (9th Cir. 2011) (availability of alternative methods of subduing a suspect is a factor in the reasonableness analysis); *Bryan v. MacPherson*, 630 F.3d 805, 831 (9th Cir. 2010) (same); *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (en banc) (same). Those are precisely the subjects of Mr. Clark's opinions.

Finally, in limine orders that exclude broad, unspecified categories of evidence are disfavored; the better practice is to resolve such questions as they arise at trial, in context. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *see also Luce v. United States*, 469 U.S. 38, 41–42 (1984) (in limine rulings are preliminary and subject to change as the case unfolds).

## III. <u>ARGUMENT</u>

### A. Any Order Limiting Expert Testimony to Disclosed Opinions Should Apply Equally to Both Parties and Should Not Bar Fair Explanation or Proper Rebuttal

#### 1. Plaintiff Does Not Oppose a Reciprocal Order

Plaintiff does not dispute the general principle on which Defendant relies. A retained expert's report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them," Fed. R. Civ. P. 26(a)(2)(B)(i), and a non-retained expert's disclosure must state the subject matter of the expected testimony and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). Plaintiff intends to comply with those rules at trial. Plaintiff therefore does not oppose the general idea of limiting each party's experts to the opinions fairly disclosed in their Rule 26 reports or disclosures and their deposition testimony, provided that the order applies to both parties. That rule should apply with equal force to Mr. Chapman, whose testimony should be confined to the opinions in his April 6, 2021, Rule 26 report and his April 19, 2021, rebuttal/supplemental report, to the extent those opinions survive Plaintiff's Motion in Limine No. 2. However, Plaintiff does oppose the limitation to the extent that it would exclude possible hypotheticals posed to Plaintiff's experts that consider facts the expert reviewed, the expert's experience and expertise, and any additional testimony presented at trial. Such hypotheticals, although not stated in the experts' reports or directly posed to the experts at

their depositions, are relevant and admissible. *See Douglas v. City of Los Angeles*, No. 2:20–CV–07439–MEMF–PD, 2024 WL 5652417, at *5–6 (C.D. Cal. July 29, 2024) (declining to exclude Roger Clark's opinions based on hypotheticals or factual assumptions); *Godinez v. Huerta*, No. 16-CV-0236-BAS-NLS, 2018 WL 2018048, at *6 n.3 (S.D. Cal. May 1, 2018) (allowing Roger Clark to respond to hypotheticals posed to him because hypotheticals were relevant to the issues and may assist the trier of fact).

**2. The Motion Should Otherwise Be Denied as Unsupported and Overbroad**

Plaintiff opposes the motion to the extent it seeks anything more than a reciprocal order to follow Federal Rule of Civil Procedure 26. First, the motion does not identify a single undisclosed opinion. Defendant points to no new opinion, no untimely supplemental report, and no nondisclosure of any kind. Defendant's assertion that Mr. Clark is "notorious" for offering new opinions in other cases, ECF No. 121 at 3:21–23, is unsupported by any citation and provides no basis for an in limine order in this case. *Krause* and *Plumley*, on which Defendant relies, addressed untimely "supplemental" reports. *Id.* at 3:22–28. There is no such report here.

Second, a Rule 26 report is "intended to set forth the substance of the direct examination," Fed. R. Civ. P. 26(a)(2) advisory committee's note to 1993 amendment, not a script from which the expert may not deviate. Any order should make clear that each side's experts may explain, illustrate, and elaborate upon their disclosed opinions and the bases for them; may respond to the evidence and testimony actually presented at trial; and may answer the questions put to them on cross-examination, including questions that open the door to matters outside their reports. Likewise, to the extent Mr. Chapman is permitted to testify, Mr. Clark should be permitted to respond in rebuttal to Mr. Chapman's opinions. Whether a particular question at trial exceeds the scope of an expert's disclosures is best resolved in context, through a specific objection. *Sperberg*, 519 F.2d at 712.

**3. Dr. Super May Testify to His Disclosed Autopsy Findings**

As to Dr. Super, the motion is premature and overbroad. Dr. Super is the forensic pathologist who performed the autopsy of Santana Juarez Gonzalez. Plaintiff disclosed him as a non-retained expert whose testimony would include "his observations, his autopsy, his findings, and his conclusions as to the locations of the entry wounds on the decedent's body from gun shots, and the

cause of death." ECF No. 124, Ex. A (Pls.' Disclosure of Expert Witnesses) at 3:11–14. Defendant deposed him. ECF No. 124, Ex. C. Because Dr. Super formed his opinions in the course of performing the autopsy, not in anticipation of litigation, no retained-expert report was required. *Cf. Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011). His autopsy report documents two gunshot wounds with an entrance in the decedent's back, each with a wound path "straight back to front, and upward"; perforation of the left lung; transection of the left subclavian artery and vein; laceration of the left hemidiaphragm with herniation of abdominal organs into the chest cavity; and fractures of multiple ribs. ECF No. 124, Ex. B at 1, 4–5. Dr. Super may testify to those findings, explain their medical significance, including reasonable inferences as to whether the gunshot wounds could have caused Decedent pain, and describe the cause of death, all of which fall squarely within his disclosure and his report. *See L.C. v. California*, No. EDCV 22-949-KK-SHKX, 2025 WL 1497591, at *5 (C.D. Cal. May 12, 2025) (non-retained medical examiner was not required to issue a report with respect to reasonable inferences and opinions formed based on medical examiner's observations and his experience and expertise).

Plaintiff does not intend to elicit from Dr. Super a new opinion, outside his autopsy findings and deposition testimony, regarding how long Mr. Juarez remained conscious after he was shot. *See* ECF No. 124, Ex. C at 43:7–12. That narrow point, however, does not support the broader relief Defendant implies, which is to keep from the jury the evidence of the decedent's pre-death pain and suffering. Those damages are recoverable in a Section 1983 survival action. *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1103–05 (9th Cir. 2014). The jury may infer that Mr. Juarez experienced pain and suffering from the nature of the wounds Dr. Super documented and Dr. Super's experience and expertise on the subject, together with the testimony of the percipient witnesses, the first responders who assessed him and pronounced his death, and the video evidence. No expert opinion is needed for the jury to draw that common-sense inference, and nothing in Defendant's motion justifies restricting that evidence.

//

//

//

### B. Mr. Clark's Police Practices Opinions Are Admissible; Plaintiff Does Not Oppose Precluding Specific Legal Terminology

#### 1. Plaintiff Does Not Oppose Exclusion of Legal Terms of Art

Consistent with the position Plaintiff has taken as to Mr. Chapman (ECF No. 116, Pl.'s Mot. in Limine No. 2, § III.A), Plaintiff does not oppose an order precluding both parties' experts from using legal terms of art, such as whether the use of force was "justified," "justifiable," "excessive," "objectively reasonable," or "lawful," and from instructing the jury on what the law requires. Accordingly, Mr. Clark will not testify that Officer Jimenez was not "justified" in using deadly force, ECF No. 124, Ex. A, Rule 26 Report of Roger Clark ("Clark Report") at 11–12 (Opinions 1 and 3), or that he used force "excessively," *id.* at 12 (Opinion 2). Nor will Mr. Clark testify about what the law required. *Id.* at 138:18–139:4. The Court will instruct the jury on the governing legal standard.

#### 2. The Substance of Mr. Clark's Opinions is Comprised of Admissible Police Practices Testimony

Precluding particular legal terminology does not, however, warrant excluding the substance of Mr. Clark's opinions. Defendant's own authorities make the point. In *Valtierra*, the court found that "several of [Mr.] Clark's opinions, *as currently formulated*," were not helpful because they were phrased as legal conclusions. ECF No. 121 at 5:16–18 (quoting *Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1198 (C.D. Cal. 2015)) (emphasis added). That is a ruling about formulation. The same is true of *Monroe* and *Godinez*, which, as Defendant describes them, addressed an expert's use of terms such as "grossly unlawful" and "excessive," and opinions about what "current law" "mandates." *Id.* at 5:10–21. The remedy for an expert's use of legal terminology is to require the expert to testify in the language of police practices and training, not to exclude his opinions. Measured against that standard, each remaining item Defendant challenges is admissible. Mr. Clark, moreover, does not make credibility determinations; his report expressly leaves conflicts in the evidence to the jury. Clark Report at 1.

<u>Opinion 1</u> (Clark Report at 10–11). Without the word "justified," Opinion 1 is that the use of deadly force is the most serious decision an officer makes; that officers are trained that their

tactical conduct and decisions leading up to the use of deadly force matter; and that Officer Jimenez fired without the precautions his training required, and without allowing nearby officers the opportunity to intercede or to employ non-lethal means, such as Officer Kensey's K-9. *Id.* That is an opinion about police training and practice, and it bears directly on the availability of alternatives. *Glenn*, 673 F.3d at 876; *Bryan*, 630 F.3d at 831.

Opinion 2 (*id.* at 11–12). Opinion 2 describes the tactics in which officers are trained, including the principle that tactical cover plus distance provides the time needed to assess a situation and respond appropriately, and opines that Officer Jimenez's failure to use or create tactical cover was a significant causal factor in the shooting. *Id.* That is not a legal conclusion. It uses no term with a specialized legal meaning and does not tell the jury what result to reach. *See Diaz*, 876 F.3d at 1197–99.

Opinion 3 (*id.* at 12). Without its final sentence, Opinion 3 identifies the alternatives that were available to Officer Jimenez: remaining at a safe distance, allowing the officers responding to the event center to contain Mr. Juarez, responding to the barn, using the available cover, and deploying Officer Kensey's K-9. *Id.* It also explains that officers are trained that they are responsible for the tactical decisions that result in their use of deadly force. *Id.* The availability of such alternatives is a recognized factor in the reasonableness analysis. *Smith*, 394 F.3d at 703; *Glenn*, 673 F.3d at 876.

Opinion 5 (*id.* at 12). Opinion 5, that Officer Jimenez's tactical decisions were contrary to appropriate police practices, is the core of any police practices expert's testimony, and it is the type of opinion the Ninth Circuit has approved. *Hyer*, 118 F.4th at 1059; *Ochoa*, 628 F. Supp. 3d at 1016; *Chien Van Bui*, 699 F. App'x at 615; *Colbert*, 2015 WL 8214204, at *2; *Hangarter*, 373 F.3d at 1016–17. It rests on three specific criticisms grounded in the record: Officer Jimenez did not formulate a plan with the other officers; he left his vehicle and pursued Mr. Juarez on foot, alone and out of communication with the other units, rather than proceeding toward the barn or intercepting Mr. Juarez short of it; and he never requested the K-9 that he knew was available. Clark Report at 12. Consistent with Plaintiff's position as to Mr. Chapman, Plaintiff has no objection to Mr. Clark describing the conduct as contrary to "accepted" or "generally accepted" police practices

and training, rather than "reasonable" ones.

Deposition testimony, ECF No. 124, Ex. H at 138–140. Without the "certainty" formulation and the word "justifiable," what remains of this testimony is Mr. Clark's explanation that POST training, including Learning Domain 20's instruction on the use of deadly force and its emphasis on reverence for human life, does not permit an officer to use deadly force based on nothing more than an unverified belief that a person might have a gun. *Id.* at 139:22–140:9. Officer Jimenez admitted that, before either of his two shots, he never saw a gun in Mr. Juarez's hand or on his person. Clark Report at 6–7 (quoting Jimenez Dep. at 43–45). Mr. Clark may testify that, under those circumstances, the use of deadly force was inconsistent with that training. That is the application of police training to the evidence, and it is admissible.

### 3. Defendant's "Contrary to Law" Argument Goes, at Most, to Weight

Defendant also argues that Mr. Clark's opinion is "contrary to law," citing *Cruz* and *Sabbe*. ECF No. 121 at 6:14–21. That argument fails. Plaintiff has agreed that Mr. Clark will not tell the jury what the law requires; the jury will receive the law from the Court's instructions. What remains of Defendant's argument is the contention that Officer Jimenez's use of deadly force was reasonable as a matter of law. The Court rejected that contention in denying summary judgment, finding, among other things, that a "reasonable jury could find that it would have been feasible for Jimenez to issue a warning that lethal force would be used if Juarez did not stop or show his hands." ECF No. 99 at 17:15–16.

Nor do Defendant's cases support exclusion. In *Cruz*, the Ninth Circuit reversed summary judgment for the officers. The language Defendant quotes is predicated on disputed facts and jury questions. *See Cruz v. City of Anaheim*, 765 F.3d 1076, 1078–80 (9th Cir. 2014). *Sabbe*, by Defendant's own description, involved a suspect who "appeared to be shooting and pointing a gun at the officers." ECF No. 121 at 6:19–21. Here, by contrast, Officer Jimenez testified that he never saw a gun in Mr. Juarez's hand or on his person and that Mr. Juarez never pointed a gun at him. Clark Report at 6–7. Defendant's disagreement with how Mr. Clark applies police training to those facts is a subject for cross-examination, not exclusion. *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are

the traditional and appropriate means of attacking shaky but admissible evidence.”).

**C. Plaintiff Does Not Oppose Exclusion of Opinion 4, but Mr. Clark May Address the Tactical Circumstances, Including the Other Officers and Resources at the Scene**

Consistent with Plaintiff's Motion in Limine No. 2 (§ III.K), which seeks to exclude Mr. Chapman's rebuttal opinion that the CHP chain of command did not endorse dangerous or out-of-policy tactics, Plaintiff does not oppose exclusion of Mr. Clark's Opinion 4, that the CHP, through its chain of command, appears to have endorsed the tactics connected to this incident. Clark Report at 12. The CHP is not a party, and no claim regarding its policies, training, or supervision is before the jury. Plaintiff asks only that the order apply equally to both experts, so that neither may offer an opinion about whether the CHP endorsed, approved, or disapproved of the officers' tactics.

Defendant's broader request to exclude Mr. Clark's opinions about “third parties,” ECF No. 121 at 6:22–7:3, however, sweeps far too broadly. The presence, positions, and capabilities of the other officers at the scene are central facts in this case. The CHP air unit had Mr. Juarez under continuous observation; ground units were in radio contact and were closing in from multiple directions; and Officer Kensey and his K-9 were in a CHP vehicle approaching the event center, and Officer Kensey was prepared to deploy the dog if asked. *See* Clark Report at 4–8. Those facts, which will be established through the testimony of the officers themselves, are the foundation for Mr. Clark's opinions that Officer Jimenez had alternatives to deadly force, that he failed to coordinate and communicate with the officers around him, and that he never requested the K-9. *Id.* at 10–12. The jury cannot evaluate the reasonableness of Officer Jimenez's decision to shoot without understanding the tactical situation in which he made it. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (reasonableness assessed in light of the totality of the circumstances). Mr. Clark should therefore be permitted to describe what the other officers were doing and what resources were available, and to explain how Officer Jimenez's own decisions departed from his training and appropriate police practices in light of those circumstances. Plaintiff does not intend to elicit from Mr. Clark any opinion that a non-party officer, or the CHP, is at fault.

//

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion in Limine No. 4, except that Plaintiff does not oppose an order, applicable equally to both parties' experts, that: (1) limits each expert to the opinions fairly disclosed in the expert's Rule 26 report(s) or disclosure and deposition testimony, without precluding the expert from explaining those opinions, responding to the evidence presented at trial, answering hypotheticals posed that consider facts the expert reviewed, the expert's experience and expertise, and any additional testimony presented at trial, or answering questions on cross-examination; (2) precludes the experts from using legal terms of art, such as "justified," "justifiable," "excessive," and "objectively reasonable," and from instructing the jury on what the law requires; and (3) precludes the experts from offering opinions about whether the CHP chain of command endorsed or approved the officers' tactics, including Mr. Clark's Opinion 4 and Mr. Chapman's corresponding rebuttal opinion. The motion should otherwise be denied, including as to the substance of Mr. Clark's Opinions 1, 2, 3, and 5, his related deposition testimony, his testimony about the tactical circumstances and resources available at the scene, and Dr. Super's testimony regarding his autopsy findings.

Respectfully Submitted,

DATED: October 13, 2026

LAW OFFICES OF DALE K. GALIPO
LAW OFFICES OF PANOS LAGOS
LAW OFFICE OF SANJAY S. SCHMIDT

By: */s/ Sanjay S. Schmidt*
Dale K. Galipo
Panos Lagos
Sanjay S. Schmidt
Attorneys for Plaintiff Joshua A. Juarez