ROB BONTA, State Bar No. 202668
Attorney General of California
NORMAN D. MORRISON, State Bar No. 212090
Supervising Deputy Attorney General
DIANA ESQUIVEL, State Bar No. 202954
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA 95814
Tel:: (916) 210-7320 | Fax: (916) 322-8288
E-mail: Diana.Esquivel@doj.ca.gov
*Attorneys for Defendant Efrain Jimenez*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **JOSHUA A. JUAREZ, individually and as successor in interest to SANTANA JUAREZ GONZALEZ, Deceased,**<br><br>Plaintiff,<br><br>**v.**<br><br>**EFRAIN JIMENEZ,**<br><br>Defendant. | No. 1:18-cv-01138-KES-EGC<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OR REFERENCES TO INFORMATION NOT KNOWN TO OFFICER JIMENEZ AT THE TIME OF THE INCIDENT**<br><br>Judge: Honorable Kirk E. Sherriff<br>Trial Date: November 10, 2026<br>Action Filed: August 22, 2018 |

Defendant opposes Plaintiff's Motion in Limine No. 1 for all the reasons asserted in Defendant's Motion in Limine No. 5 to be permitted to introduce evidence of Decedent's criminal and drug history (*see* ECF No. 122). Defendant incorporates by reference the authorities and argument asserted in his motion to show that such evidence is admissible and relevant to Plaintiff's damages claims. Defendant submits this opposition to address several incorrect or incomplete assertions in Plaintiff's motion that such evidence is inadmissible or irrelevant.

Foremost, a peace officer is permitted to introduce evidence of facts that were unknown to him at the time of the incident where such facts corroborate or increase the likelihood of the existence of facts that were observed and relied upon by the officer in the officer's decision to use

force during the incident. *Boyd v. Cty. and Cnty. of S.F.*, 576 F.3d 938, 944 (9th Cir. 2009); *see also*, *Graham, v. Connor*, 490 U.S. 385, 399, n. 12 (1980) (stating that factfinder may consider outside evidence "in assessing the credibility of an officer's account of the circumstances that prompted the use of force"); *Estate of Chum v. Cty. of L.A.*, 585 Fed. Appx. 435, 436 (9th Cir. 2014) (citing *Boyd, supra*, 576 F3d at 943-945 ("Because the challenged testimony made [defendant's] account more probable, the testimony was relevant, and the district court did not abuse its discretion by admitting it"). Thus, in an excessive force case, such as this, "where what the officer perceived **just prior to the use of force** is in dispute, evidence that may support one version of events over another is relevant and admissible." *Boyd*, 576 F.3d at 944 (emphasis added). Accordingly, Plaintiff's wholesale statement that "information unknown to an officer at the time of his use of force—including information acquired after the incident by investigators or during discovery—cannot be considered" is simply wrong. Notwithstanding that after-the-fact information may be admissible, as the parties discussed during their informal resolution efforts, Defendant does not seek to introduce evidence of Decedent's criminal or drug-use history for purposes of liability, including the reasonableness of the officer's use of lethal force.[1]

In his motion, Plaintiff argues that Decedent's history of criminal and gang activity and drug use is irrelevant because he is not seeking economic damages, only non-economic damages. (Pl.'s Mot. 3:15-16.) He further contends such evidence is irrelevant because "[d]espite not being able to see each other in person regularly, Decedent and Plaintiff maintained a good relationship" (*Id*. at 3:13-14) and "there is no evidence that Decedent's drug or alcohol use affected Decedent's relationship with Plaintiff, especially considering that Plaintiff is unable to recall living together with Decedent" (*Id*. at 4:16-18). Plaintiff's argument misses the mark because it ignores the relationship that Plaintiff and Decedent could have had but for Decedent's alleged wrongful death (a deprivation Plaintiff will undoubtedly advance at trial) and how Decedent's lifestyle, including his criminal and drug activities, would have affected any prospective relationship and Decedent's life expectancy.

[1] Defendant is agreeable to not eliciting testimony or introducing evidence of Decedent's gang affiliation at trial.

Non-economic damages include "the loss of the decedent's love, companionship, comfort, cate, assistance, protection, affection, society, moral support" and "training and guidance." CACI No. 3921 (2026). Because death permanently extinguishes the relationship, the loss recoverable necessarily encompasses both past and future dimensions of the relationship. *Canavin v. Pacific Southwest Airlines*, 148 Cal. App. 3d 512, 520 (1983) (noting that the measure of damages in a wrongful death action is the value of the benefits the heirs could reasonably expect to receive from the deceased if he had lived) (citation and quotations omitted). Further, the decedent's life expectancy is a proper consideration in awarding wrongful-death damages. (*Dickinson v. So. Pac. Co*., 172 Cal. 727 (1916); *In re Pago Pago Aircrash of January 30, 1974*, 525 F. Supp. 1007, 1019 (C.D. Cal. 1981), quoting *Greater Westchester Homeowners Assn. v. Cty. of L.A.*, 26 Cal. 3d 86, 103 (1979) (stating that, in assessing wrongful damages for intangible loss, the factfinder "possesses full authority to consider the duration" of such losses). The decedent's "health, habits, activities, lifestyle, and occupation" are all proper considerations for determining a decedent's life expectancy. CACI 3921.

Evidence of Decedent's drug use is relevant and proper consideration for the jury to determine Decedent's life expectancy and whether Plaintiff's limited contact with Decedent was due to distance or drug abuse. Decedent reported to a Probation Officer that he (Decedent) started using methamphetamine at the age of 14, and it gradually became a daily habit. This is consistent with the toxicology findings that Decedent had large quantities of methamphetamine in his system on the day of the incident; his methamphetamine level was 0.74 mg/L (effective levels are 0.01 – 0.05 mg/L and potentially toxic levels range from 0.2 to 5 mg/L). While Plaintiff is expected to testify that Decedent's drug use did not or would not have affected his relationship with Decedent, a jury may conclude that such testimony is not believable or determine that the lack of contact between Plaintiff and Decedent was due to the latter's drug abuse. A jury may also conclude that Decedent's "daily habit" significantly reduced his life expectancy. Thus, evidence of Decedent's drug abuse is relevant to Plaintiff's damages claim and any prejudice may be cured with a limiting instruction.

Similarly, Decedent's criminal history is relevant to Plaintiff's damages related to the loss of the relationship he could have had with his father. While Decedent's prior criminal history may have been "minor," as Plaintiff argues in his motion, Decedent was facing substantial prison time had he survived. Decedent carjacked a vehicle using a firearm that he pointed at the driver and her child. Under California Penal Code sections 215 (carjacking) and 12022.53 (firearm enhancement), Decedent was facing, at a minimum, thirteen years in prison. Such a lengthy prison term would have undoubtedly hampered the relationship with Plaintiff. *Estate of Elkins v. Pelayo*, No. 1:13-CV-1483 AWI-SB, 2022 WL 1123117, *26 (E.D. Cal. April 14, 2022) ("Periods of incarceration reduce the amount of support and society that a prisoner can provide to his family."). Further, Decedent's criminal history shows that his level of violence was escalating. A jury may reasonably conclude that Decedent's violence and continued criminal activity would have soured his relationship with Plaintiff, who is now an adult with his own child, such that Plaintiff's damages for the loss of any future relationship with Decedent is minimal or nonexistent. Lastly, Decedent's escalating criminal activities, especially crimes involving a gun, are clearly relevant to Decedent's life expectancy. Thus, evidence of Decedent's criminal history is relevant to Plaintiff's damages and any prejudice can be cured with a limiting instruction.

For these reasons, and the reasons advanced in Defendant's Motion in Limine No. 5, the Court should deny Plaintiff's motion and grant Defendant's motion to admit evidence or elicit testimony of Decedent's drug and criminal history.

Dated: October 13, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
NORMAN D. MORRISON
Supervising Deputy Attorney General

***/s/ Diana Esquivel***

DIANA ESQUIVEL
Deputy Attorney General
*Attorneys for Defendant Jimenez*

SA2018302522
45378073