**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
E-mail: dalekgalipo@yahoo.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333; Fax: (818) 347-4118

**Panos Lagos, Esq. / SBN 61821**
**LAW OFFICES OF PANOS LAGOS**
6569 Glen Oaks Way
Oakland, CA 94611
510.530.4078
510.530.4725 (FAX)
E-mail: panos@panoslagoslaw.com

**Sanjay S. Schmidt (SBN 247475)**
**LAW OFFICE OF SANJAY S. SCHMIDT**
1388 Sutter Street, Suite 810
San Francisco, CA 94109
Tel. (415) 563-8583
Fax (415) 223-9717
Email: ss@sanjayschmidtlaw.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSHUA A. JUAREZ, individually and as successor in interest to SANTANA JUAREZ GONZALEZ, Deceased;<br><br>Plaintiffs,<br><br>v.<br><br>State of California Highway Patrol Officer EFRAIN JIMENEZ (ID#18075), individually; A;J, a minor, through her mother and Next Friend, SELENE RAMOS, individually and as successor in interest for SANTANA JUAREZ GONZALEZ, Deceased; and DOES 1 to 100, jointly and severally;<br><br>Defendants. | Case No. 1:18-cv-01138-KES-SKO<br><br>**PLAINTIFF'S TRIAL BRIEF** |

## I. **Statement of Facts**

This civil rights and state tort action arises from the officer-involved shooting death of Santana Juarez Gonzalez ("Decedent") by California Highway Patrol Officer Efrain Jimenez ("Defendant Jimenez"). On August 20, 2017, at approximately 2:00 p.m., Defendant Jimenez received a radio transmission regarding an armed carjacking at a gas station. Defendant Jimenez received information that three Hispanic males were involved in a carjacking and that a silver-colored handgun was pointed at a woman and her child. Defendant Jimenez also received information that one of the suspects had short, black spiky hair and was wearing a black shirt and that witnesses had detained two of the suspects and were holding them half a mile south of the gas station. Defendant Jimenez was provided with further information that the third suspect, later identified as Decedent, had taken the vehicle and crashed the vehicle at State Route 41 and Avenue 12.

When Defendant Jimenez came into contact with the two suspects who had been detained by witnesses, he patted the suspects down for weapons and questioned them about the gun used in the carjacking. Neither suspect had a gun and neither suspect offered any additional information regarding Decedent or the carjacking. Defendant Jimenez then proceeded to the location where the third suspect had crashed the car.

At the car crash location, Defendant Jimenez assisted Officers Scott Jobinger and Isaac Martinez with setting up a perimeter as the officers had received information that the third suspect fled on foot after the car crash. While there, Defendant Jimenez received information from Officer Shandara Kensey that he had located the third suspect, had observed what appeared to be bulge in the suspect's pocket, and believed that the suspect was possibly armed. Defendant Jimenez responded to Officer Kensey's location—over five miles from the car crash perimeter. CHP AirOps overhead was providing the officers with updates regarding Decedent's location. Defendant Jimenez heard CHP AirOps transmit that Decedent was running towards the "Red Barn" Event Center and heard Officer Martinez transmit that someone needed to get to the Red Barn. Defendant Jimenez and Officer Jobinger, in separate vehicles, drove through the field in pursuit of Decedent. Officer Jobinger briefly stopped his vehicle in an open orchard and attempted

a short foot pursuit of Decedent before giving up after realizing he was not going to catch Decedent on foot. Defendant Jimenez then exited his vehicle with his rifle and pursued Decedent on foot while yelling commands for Decedent to stop.

Defendant Jimenez pursued Decedent on foot for approximately three-quarters of a mile and then discharged his weapon, shooting the Decedent in the back. Prior to discharging his weapon, Defendant Jimenez issued commands to Decedent to stop, get on the ground, and to get his hands out of his pocket. While Defendant Jimenez claims he also issued a deadly force warning, patrons at the nearby Red Barn testified that they did not hear any such warning. As Decedent walked and staggered on the dirt road that led to the Red Barn, Defendant Jimenez fired a shot at Decedent. At the time of the first shot, Decedent's left hand was holding his shirt that he had removed during the pursuit and Decedent's right hand was not visible to Defendant Jimenez. Decedent was approximately 50 to 75 yards from the Red Barn when Defendant Jimenez fired the first shot and struck Decedent in the back. After the first shot, Decedent continued to stagger down the dirt road, at which point Defendant Jimenez fired a second shot that struck Decedent in the back. After taking a couple more steps, Decedent fell to the ground.

Prior to the second shot, video from CHP AirOps showed a patrol vehicle approaching Defendant Jimenez and Decedent's location on an elevated dirt road. Officers Martinez and Kensey were inside the approaching vehicle and heard the first shot as the vehicle stopped nearby. The CHP AirOps shows an officer exiting the patrol vehicle and running toward Decedent prior to the second shot. The officer reached Decedent's final resting position seconds after he fell to the ground and before Defendant Jimenez reached Decedent. Decedent was unarmed at the time he was shot.

## II. <u>Summary of Points of Law</u>

Based on an informal stipulation between the Parties, Plaintiffs maintain the following claims:

1. Fourth Amendment—Excessive Force (42 U.S.C. § 1983), against Defendant Jimenez;
2. Battery (Wrongful Death and Survival), against Defendant Jimenez;
3. Negligence (Wrongful Death and Survival), against Defendant Jimenez; and

4. Bane Act (Cal. Civ. Code § 52.1), against Defendant Jimenez.

Defendant has asserted affirmative defenses of qualified immunity against Plaintiff's § 1983 claim and immunity under California law against Plaintiff's state law claims. (*See* Doc. No. 111 at 16-18).

A. Fourth Amendment—Excessive Force

"Fourth Amendment claims of excessive force are analyzed under an objective reasonableness standard." *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010). When evaluating a claim of excessive force, the inquiry is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them. *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Accordingly, facts of which officers were unaware "are irrelevant to the reasonableness analysis." *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1123 n.4 (9th Cir. 2021); *see Glenn*, 673 F.3d at 873 n.8 ("We cannot consider evidence of which the officers were unaware—the prohibition against evaluating officers' actions 'with the 20/20 vision of hindsight' cuts both ways."). "[The reasonableness] inquiry requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." *Glenn*, 673 F.3d at 871 (quoting *Graham*, 490 U.S. at 396). "[T]he amount of force applied" must be balanced "against the need for that force." *Bryan v. McPherson*, 630 F.3d 805, 823-24 (9th Cir. 2010) (cleaned up). "[A]ll force—lethal and non-lethal—must be justified by the need for the specific level of force employed." *Id.* at 825.

"The intrusiveness of a seizure by means of deadly force is unmatched," *Graham*, 490 U.S. at 397, "because, once deceased, an individual can no longer stand trial to have his guilt and punishment determined." *Estate of Aguirre County of Riverside*, 29 F.4th 624, 628 (9th Cir. 2022) (cleaned up) (citing *Tennessee v. Garner*, 471 U.S. 1, 9 (1985)). Government interest factors to balance against the type of force used include "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is

actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Additional factors to consider are (4) "whether proper warnings were given" that force would be used if the suspect did not comply, (5) "the availability of less intrusive" options to effectuate arrest, and (6) "whether the suspect has exhibited signs of mental illness." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1033-34 & n.9 (9th Cir. 2018); *see S.R. Nehad v. Browder*, 929 F.3d 1125, 1137-38 (9th Cir. 2019).

"[Ninth Circuit] precedent has long made clear that the suspect's possession of a weapon at some point in the incident does not provide an officer with carte blanche to use deadly force." *Lam v. City of Los Banos*, 976 F.3d 986, 1001 (9th Cir. 2020); *see Calonge v. City of San Jose*, 104 F.4th 39, 48 (9th Cir. 2024) (the Ninth Circuit has "held over and over that a suspect's possession of a gun does not itself justify deadly force"). "[T]o justify deadly force, an objective belief that an imminent threat of death or serious physical harm is required." *Price v. Sery*, 513 F.3d 962, 969 (9th Cir. 2008). A merely subjective belief of threat cannot justify the use of force, "rather, the objectively describable totality of the circumstances would have to be such as to justify the use of force," and a sincerely held but unreasonable belief is insufficient to justify the use of force. *Id.* An officer's "desire to resolve quickly a potentially dangerous situation" does not, on its own, justify the use of deadly force. *Deorle*, 272 F.3d at 1281. Additionally, "law enforcement officials may not kill suspects who do not pose an immediate threat to their safety or to the safety of others simply because they are armed." *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997).

Here, the totality of the circumstances does not support the contention that the Decedent posed an immediate threat of death or serious bodily injury to anyone at the time Defendant Jimenez used deadly force, striking Decedent twice in the back and killing him. Defendant Jimenez did not see a gun on Decedent's person or in his hands prior to the shooting. Decedent traveled a considerable distance on foot, with Defendant Jimenez pursuing Decedent on foot for the last three-quarters of a mile. At no time during Decedent's flight did he ever threaten anyone with a gun, brandish a gun, or make any verbal threats against anyone. Decedent appeared tired and exhausted and was moving in a slow, staggering manner at the time of the shooting. Additionally, Decedent never made any threatening movement towards Defendant Jimenez nor was Decedent in close proximity to any

bystanders at the time of the shooting. Lastly and importantly, Decedent was unarmed at the time of the shooting.

Officers are trained to give a verbal warning that they are prepared to use deadly force before shooting. There is evidence in the record that supports the inference that Defendant Jimenez failed to issue a deadly force warning before shooting Decedent, despite it being feasible to do so. Further, there were alternative, less-lethal options reasonably available to Defendant Jimenez to stop Decedent's flight and to take Decedent into custody at the time Defendant Jimenez used deadly force.

B. <u>Battery</u>

A state law claim for battery by a peace officer considers the "totality of the circumstances," which includes pre-force conduct as well as the use of force. *McLeod v. City of Redding*, No. 2:22-CV-00585 WBS JDP, 2024 WL 3011227, at *8 (E.D. Cal. June 12, 2024) (finding that the analysis on the state law battery claim "requires the same 'totality of the circumstances' inquiry that applied to negligence claims" including pre-shooting conduct); *Villalobos v. City of San Maria*, 85 Cal. App. 5th 383, 389 (2022) (evaluating both battery and negligence claims against police officers under the reasonableness standard articulated in *Hayes*); *Koussaya v. City of Stockton*, 54 Cal. App. 5th 909, 937 (2020) (same)). Indeed, California Civil Jury Instructions for battery by a peace officer (deadly force), CACI 1305B, and negligent use of deadly force by a peace officer, CACI 441, instructs that the jury may consider the officer's "tactical conduct and decisions before using deadly force." CACI 441 and 1035B further states:

> A threat of death or serious bodily injury is "imminent" when…a person has the *present ability, opportunity, and apparent intent to immediately* cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, *no matter how great the fear and no matter how great the likelihood of the harm*, but is one that, from appearances, must be instantly confronted and addressed.

CACI 441, 1305B (emphasis added). As discussed above, the facts do not support a finding that Decedent presented an immediate threat of death or serious bodily injury to anyone at the time of the shooting. Further, the facts do not support a finding that Decedent had the present ability, opportunity, and apparent intent to immediate cause death or serious bodily injury at the time of the shooting.

C. Negligence

The California Supreme Court "has long recognized that peace officers have a duty to act reasonably when using deadly force." *Hayes v. Cnty. of San Diego*, 57 Cal.4th 622, 629 (2013). "[A]n officer's lack of due care can give rise to negligence liability for the intentional shooting death of a suspect." *Munoz v. Olin*, 24 Cal. 3d 629, 634 (1979). California "state negligence law, which considers the totality of the circumstances surrounding any use of []force, is broader than federal Fourth Amendment law, which tends to focus more narrowly on the moment when []force is used." *Hayes*, 57 Cal.4th at 639 (internal citations omitted). The totality of the circumstances necessarily includes the officer's "tactical conduct and decisions leading up to the use of []force." *See id.* at 637-38. The difference between the California negligence standard and federal Fourth Amendment standard is not simply a difference in scope; although the California negligence standard and the federal Fourth Amendment standard both require consideration of the "totality of the circumstances," a factfinder can view those circumstances differently under California's negligence reasonableness standard. *Alves v. Cnty. of Riverside*, 135 F.4th 1161, 1172-73 (9th Cir. 2025). "Under California law, the officer's pre-shooting decisions can render his behavior unreasonable under the totality of the circumstances, even if his use of deadly force at the moment of the shooting might be reasonable in isolation." *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021) (citing *Mendez v. Cnty. of Los Angeles*, 897 F.3d 1067, 1082–83 (9th Cir. 2018); *Grudt v. City of Los Angeles*, 2 Cal.3d 575,587 (1970)); *see also Mulligan v. Nichols*, 835 F.3d 983, 991 (9th Cir. 2016).

Defendant Jimenez's negligent pre-force conduct and tactics, including, but not limited to, his decision to pursue Decedent on foot in an open-air environment despite allegedly believing that Decedent was armed and Defendant Jimenez's failure to utilize other reasonable, less-lethal options that were readily available to him, pushes his use of deadly force against an unarmed Decedent further into unreasonable territory.

D. Bane Act

"The elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a 'specific intent to violate' a

constitutional right." *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022). "[A] reckless disregard for a person's constitutional rights is evidence of specific intent to deprive that person of those rights." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018).

E. Qualified Immunity

An officer is not entitled to qualified immunity where "(1) facts viewed in the light most favorable to the injured party show that the officer violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Ford v. City of Yakima*, 706 F.3d 1188, 1192 (9th Cir. 2013) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). A right is clearly established where its "contours . . . [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This requires "cases relevant to the situation [the officer] confronted," *Brosseau v. Haugen*, 543 U.S. 194, 200 (2004), however, it does "not require a case directly on point," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In considering existing precedent, the Court "may look at unpublished decisions and the law of other circuits, in addition to Ninth Circuit precedent." *Prison Legal News v. Lehman*, 397 F.3d 692, 702 (9th Cir. 2005).

Here, viewing the facts in the light most favorable to Plaintiff, pre-existing case law with sufficiently similar facts placed Defendant Jimenez on notice that the use of deadly force under the circumstances of this case was unreasonable. *See N.E.M. v. City of Salinas*, 761 F. App'x 698, 700 (9th Cir. 2019) ("“it was clearly established that officers may not use deadly force against a person who is armed but cannot reasonably be perceived to be taking any furtive, harrowing, or threatening actions…even in circumstances in which the suspect has allegedly committed a violent crime in the immediate past"); *Est. of Lopez by & through Lopez v. Gelhaus*, 871 F.3d 998, 1020 (9th Cir. 2017); *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013); *Harris v. Roderick*, 126 F.3d 1189, 1203–04 (9th Cir. 1997); *Curnow By & Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991)) (cleaned up); *see also Cole Estate of Richards v. Hutchins*, 959 F.3d 1127, 1134 (8th Cir. 2020) ("it was clearly established that a person does not pose an immediate threat of serious physical harm to another when, although the person is in possession of a gun, he does not point it at another or wield it in an otherwise menacing fashion").

F. Statutory Immunity

"Immunity is reserved for those 'basic policy decisions [which have] been [expressly] committed to coordinate branches of government, and as to which judicial inference would thus be 'unseemly.'" *Gillan v. City of San Marino*, 147 Cal.App.4th 1033, 1051 (2007) (quoting *Johnson v. State of California*, 69 Cal. 2d 782, 293 (1968)). A police officer's decision to detain or arrest a suspect is "not a basic policy decision, but only an operational decision by the police purporting to apply the law." *Id.* California law denies immunity to police officers who use excessive force in arresting a suspect. *See Nelson v. City of Davis*, 685 F.3d 867, 875 (9th Cir. 2012); *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002); *Blankenhorn v. City of Orange*, 485 F.3d 463, 487 (9th Cir. 2007); *Scruggs v. Haynes*, 252 Cal.App.2d 256, 264 (1967). Because Plaintiff's claim arises out of Defendant Jimenez's use of force during a detention/arrest, which was not a policy decision, Defendant Jimenez is not entitled to immunity under section 820.2.

Penal Code § 835a provides that "peace officers are privileged under state law to use reasonable force effect the arrest, to prevent escape or to overcome resistance." The operative language is clear: The privilege applies only to the use of "reasonable" force," not to "unreasonable" force. *See also Hernandez v. City of Pomona*, 46 Cal.4th 501 (2009) (same). A peace officer is never privileged to use excessive force. *See Scruggs*, 252 Cal.App.2d at 267-68.

Respectfully submitted,

DATED: November 3, 2026

LAW OFFICES OF DALE K. GALIPO
LAW OFFICES OF PANOS LAGOS
LAW OFFICE OF SANJAY S. SCHMIDT

*/s/ Dale K. Galipo*

Dale K. Galipo
Panos Lagos
Sanjay J. Schmidt
Attorneys for Plaintiff Joshua Juarez (J.A.J.)