FILED

NOV 1 9 2026

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY ______ DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA A. JUAREZ et al.,<br>Plaintiff,<br>v.<br>EFRAIN JIMENEZ et al.,<br>Defendant. | No. 1:18-CV-01138-KES-EGC<br><br>JURY INSTRUCTIONS GIVEN |

The attached Jury Instructions comprise all the instructions, including preliminary instructions, mid-trial instructions, and final instructions, given to the trial jurors by United States District Judge Kirk E. Sherriff in the above-entitled case.

Dated: November 19, 2026

KEITH HOLLAND, CLERK OF THE COURT

By: *Victoria Gonzales*
Victoria Gonzales, Deputy Clerk

# PRELIMINARY INSTRUCTIONS

**JURY INSTRUCTION NO. 1**

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial, I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

**JURY INSTRUCTION NO. 2**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

This case arises out of the shooting death of decedent Santana Juarez Gonzalez on August 20, 2017 in Madera, California. The Plaintiff in this case is the decedent's son, Joshua Juarez. The Defendant is California Highway Patrol Officer Efrain Jimenez. Plaintiff contends that Defendant Efrain Jimenez used excessive and unreasonable deadly force against decedent Santana Juarez Gonzalez. Plaintiff also contends that Defendant Efrain Jimenez was negligent in his conduct with the decedent.

Defendant Efrain Jimenez denies these claims and contends that his use of force and conduct were reasonable and justified under the totality of the circumstances, and that he acted in self-defense and defense of others.

## JURY INSTRUCTION NO. 3

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

## JURY INSTRUCTION NO. 4

The evidence you are to consider in deciding what the facts are consists of:

(1) the sworn testimony of any witness;

(2) the exhibits that are admitted into evidence;

(3) any facts to which the parties have agreed; and

(4) any facts that I may instruct you to accept as proved.

**JURY INSTRUCTION NO. 5**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. Lawyers are not witnesses. What lawyers may say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may see or hear, when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

## JURY INSTRUCTION NO. 6

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

**JURY INSTRUCTION NO. 7**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

**JURY INSTRUCTION NO. 8**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, the lawyer may object. If I overrule the objection, the question may be answered, or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

**JURY INSTRUCTION NO. 9**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**JURY INSTRUCTION NO. 10**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, the platform "X" formerly known as Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during

the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers— until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result, requiring the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

**JURY INSTRUCTION NO. 11**

If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch, or listen to any news media account or commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

**JURY INSTRUCTION NO. 12**

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

If at any time you cannot hear or see the testimony, evidence, questions, or arguments, let me know so that I can correct the issue.

## JURY INSTRUCTION NO. 13

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the jury room. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

**JURY INSTRUCTION NO. 14**

Only the lawyers and I are allowed to ask questions of witnesses. A juror is not permitted to ask questions of witnesses. If, however, you are unable to hear a witness or lawyer, please raise your hand and I will correct the situation.

**JURY INSTRUCTION NO. 15**

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**JURY INSTRUCTION NO. 16**

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and plaintiff and defendant's attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

# MID-TRIAL INSTRUCTIONS

# JURY INSTRUCTION

**At the End of Each Day of the Case:**

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom. This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case. This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers. You also must not communicate with anyone, in any way, about this case. And you must ignore any information about the case that you might see while browsing the Internet or your social media feeds.

**At the Beginning of Each Day of the Case:**

As I reminded you yesterday and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here. So you must not learn any additional information about the case from sources outside the courtroom. To ensure fairness to all parties in this trial, I will now ask each of you whether you have learned about or shared any information about this case outside of this courtroom, even if it was accidental.

**JURY INSTRUCTION**

Evidence will be presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

# FINAL INSTRUCTIONS

**JURY INSTRUCTION NO. 1**

Members of the Jury: Now that you have heard all of the evidence and will hear the arguments of the parties, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**JURY INSTRUCTION NO. 2**

As I previously instructed you, the evidence you are to consider in deciding what the facts are consists of:

(1) the sworn testimony of any witness;

(2) the exhibits that are admitted into evidence;

(3) any facts to which the parties have agreed; and

(4) any facts that I have instructed you to accept as proved.

**JURY INSTRUCTION NO. 3**

The parties have agreed to certain facts that will be read to you. You must therefore treat these facts as having been proved.

(1) The incident occurred on August 20, 2017.

(2) Defendant Efrain Jimenez was assigned to patrol the southeast area of Madera County on August 20, 2017.

(3) At all relevant times during the incident, Efrain Jimenez was acting within the course and scope of his employment as a California Highway Patrol officer.

(4) At all relevant times during the incident, Efrain Jimenez was acting under color of state law.

(5) Efrain Jimenez discharged his firearm twice at Santana Juarez Gonzalez.

(6) Santana Juarez Gonzalez was struck twice in the back.

(7) Santana Juarez Gonzalez died at the scene as a result of his gunshot wounds.

(8) A gun was not found on Santana Juarez Gonzalez's person after he was shot.

## JURY INSTRUCTION NO. 4

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. As I previously instructed you, certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. Lawyers are not witnesses. What they said in their opening statements and at other times, and what they may say in their closing arguments, is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way a lawyer stated them, your memory of them controls.

(2) Questions and objections by a lawyer are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may have seen or heard, when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**JURY INSTRUCTION NO. 5**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**JURY INSTRUCTION NO. 6**

You have heard testimony from Roger Clark, Dr. Mark Super, and Clarence Chapman, who testified to their opinions and the reasons for their opinions. This opinion testimony is allowed because of the education or experience of the witnesses. Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons for the opinion, and all the other evidence in the case.

## JURY INSTRUCTION NO. 7

Plaintiff brings claims under both federal law and state law. The law that applies to these claims is different.

**JURY INSTRUCTION NO. 8**

The plaintiff brings his Fourth Amendment claim for excessive force under the federal statute, 42 U.S.C. § 1983, which provides that any person or persons who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

## JURY INSTRUCTION NO. 9

In order to prevail on his § 1983 claim for excessive force against defendant Efrain Jimenez, plaintiff Joshua Juarez must prove each of the following elements by a preponderance of the evidence:

First, the defendant acted under color of state law; and

Second, the acts of the defendant deprived Santana Juarez Gonzalez of particular rights under the United States Constitution as explained in later instructions; and

Third, the defendant's conduct was an actual cause of the claimed injury.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation. The parties have stipulated that defendant Jimenez acted under color of state law.

The defendant's conduct was an actual cause of Santana Juarez Gonzalez's injury only if the injury would not have occurred 'but for' that conduct, and the conduct has a sufficient connection to the result.

If you find the plaintiff has proved each of these elements, and if you find that the plaintiff has proved all the elements the plaintiff is required to prove under the next instruction, your verdict should be for the plaintiff on his Fourth Amendment claim. If, on the other hand, you find that the plaintiff has failed to prove any one or more of these elements, your verdict should be for the defendant on the Fourth Amendment claim.

**JURY INSTRUCTION NO. 10**

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest or in defending himself or in attempting to stop a fleeing or escaping suspect. Therefore, to establish an unreasonable seizure in this case, plaintiff Joshua Juarez must prove by a preponderance of the evidence that defendant Efrain Jimenez used excessive force against Santana Juarez Gonzalez.

Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

In determining whether defendant Jimenez used excessive force in this case, consider all of the circumstances known to the defendant on the scene, including:

1. The nature of the crime or other circumstances known to defendant Jimenez at the time the force was applied;
2. Whether Santana Juarez Gonzalez posed an immediate threat of death or serious bodily injury to the officer or to others;
3. Whether Santana Juarez Gonzalez was actively resisting arrest or attempting to evade arrest by flight;
4. The amount of time defendant Jimenez had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;
5. The relationship between the need for the use of force and the amount of force used;
6. The extent of Santana Juarez Gonzalez's injury;
7. Any effort made by defendant Jimenez to temper or to limit the amount of force;
8. The severity of the security problem at issue;
9. The availability of alternative methods to take Santana Juarez Gonzalez into custody;

10. The number of lives at risk (for example, motorists, pedestrians, police officers) and the parties' relative culpability; that is, which party created the dangerous situation, and which party is more innocent;
11. Whether it was practical for defendant Jimenez to give warning of the imminent use of force, and whether such warning was given;
12. Whether a reasonable officer would have or should have accurately perceived a mistaken fact;
13. Whether there was probable cause for a reasonable officer to believe that the suspect had committed a crime involving the infliction or threatened infliction of serious physical harm.

"Probable cause" exists when, under all of the circumstances known to the officer at the time, an objectively reasonable police officer would conclude there is a fair probability that the decedent has committed or was committing a crime.

**JURY INSTRUCTION NO. 11**

Plaintiff Joshua Juarez claims that defendant Efrain Jimenez intentionally interfered with Santana Juarez Gonzalez's civil rights by threat, intimidation, or coercion ("Bane Act claim"). To establish this claim, plaintiff Juarez must prove all of the following:

1. That defendant Jimenez acted violently against Santana Juarez Gonzalez to prevent him from exercising his right to be free from excessive force;
2. That defendant Jimenez acted with reckless disregard for Santana Juarez Gonzalez's enjoyment of the right to be free from excessive force;
3. That Santana Juarez Gonzalez was harmed; and
4. That defendant Jimenez's conduct was a substantial factor in causing Santana Juarez Gonzalez's harm.

**JURY INSTRUCTION NO. 12**

This instruction applies to plaintiff's Bane Act claim. Defendant Jimenez claims he is not responsible for Santana Juarez Gonzalez's harm because he was acting in self-defense or defense of others. To succeed, defendant Jimenez must prove by a preponderance of the evidence both of the following:

1. That defendant Jimenez reasonably believed that Santana Juarez Gonzalez posed an immediate threat of death or serious bodily injury to defendant Jimenez or the patrons at the Red Barn; and
2. That defendant Jimenez used only the amount of force that was reasonably necessary to protect himself or the patrons at the Red Barn.

## JURY INSTRUCTION NO. 13

A peace officer may use deadly force only when necessary in defense of human life. Plaintiff Joshua Juarez claims that defendant Efrain Jimenez unnecessarily used deadly force on Santana Juarez Gonzalez. To establish this claim for battery, plaintiff must prove all of the following:

1. That defendant Jimenez intentionally touched Santana Juarez Gonzalez, or caused him to be touched.
2. That defendant Jimenez used deadly force on Santana Juarez Gonzalez;
3. That defendant Jimenez's use of deadly force was not necessary to defend human life;
4. That Santana Juarez Gonzalez was killed; and
5. That defendant Jimenez's use of deadly force was a substantial factor in causing Santana Juarez Gonzalez's death.

Defendant Jimenez's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by defendant Jimenez at the time, that deadly force was necessary:

(1) to defend against an imminent threat of death or serious bodily harm to defendant Jimenez or to another person; or

(2) to apprehend a fleeing person for a felony, when all of the following conditions are present:

i. The felony threatened or resulted in death or serious bodily injury to another;

ii. Defendant Jimenez reasonably believed that the person fleeing would cause death or serious bodily injury to another unless immediately apprehended; and

iii. If practical under the circumstances, defendant Jimenez made reasonable efforts to identify himself as a peace officer and to warn that deadly force would be used, unless the officer had objectively reasonable grounds to believe the person is aware of those facts.

"Deadly force" means any use of force that creates a substantial risk of causing death or serious bodily injury, including, but not limited to, the discharge of a firearm.

A threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to the peace officer at the time, including the conduct of defendant Jimenez and Santana Juarez Gonzalez leading up to the use of deadly force. In determining whether defendant Jimenez's use of deadly force was necessary in defense of human life, you must consider defendant Jimenez's tactical conduct and decisions before using deadly force on Santana Juarez Gonzalez and whether defendant Jimenez used other available resources and techniques as an alternative to deadly force, if it was reasonably safe and feasible to do so.

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other deescalation tactics are not retreat. A peace officer does not lose the right to self-defense by use of objectively reasonable force to effect the arrest or to prevent escape or to overcome resistance. A peace officer does, however, have a duty to use reasonable tactical repositioning or other deescalation tactics.

## JURY INSTRUCTION NO. 14

A peace officer may use deadly force only when necessary in defense of human life. Plaintiff Joshua Juarez claims that defendant Efrain Jimenez was negligent in using deadly force to arrest, detain, or prevent the escape of Santana Juarez Gonzalez. To establish this claim, plaintiff must prove all of the following:

1. That defendant Jimenez was a peace officer;
2. That defendant Jimenez used deadly force on Santana Juarez Gonzalez;
3. That defendant Jimenez's use of deadly force was not necessary to defend human life;
4. That Santana Juarez Gonzalez was killed; and
5. That defendant Jimenez's use of deadly force was a substantial factor in causing Santana Juarez Gonzalez's death.

Defendant Jimenez's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by defendant Jimenez at the time, that deadly force was necessary either:

(1) to defend against an imminent threat of death or serious bodily injury to defendant Jimenez and/or to another person; or

(2) to apprehend a fleeing person for a felony, when all of the following conditions are present:

  i. The felony threatened or resulted in death or serious bodily injury to another;

  ii. Defendant Jimenez reasonably believed that the person fleeing would cause death or serious bodily injury to another unless immediately apprehended; and

  iii. Defendant Jimenez made reasonable efforts to identify himself as a peace officer and to warn that deadly force may be used, unless the officer had objectively reasonable grounds to believe the person is aware of those facts.

"Deadly force" is force that creates a substantial risk of causing death or serious bodily injury. It is not limited to the discharge of a firearm.

A threat of death or serious bodily injury is "imminent" if, based on the totality of the

circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or to another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to or perceived by the peace officer at the time, including the conduct of defendant Jimenez and Santana Juarez Gonzalez leading up to the use of deadly force. In determining whether defendant Jimenez's use of deadly force was necessary in defense of human life, you must consider defendant Jimenez's tactical conduct and decisions before using deadly force on Santana Juarez Gonzalez and whether defendant Jimenez used other available resources and techniques as an alternative to deadly force, if it was reasonably safe and feasible to an objectively reasonable officer.

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other deescalation tactics are not retreat. A peace officer does not lose the right to self-defense by using objectively reasonable force to arrest, prevent escape, or overcome resistance.

**JURY INSTRUCTION NO. 15**

Defendant Efrain Jimenez claims that Santana Juarez Gonzalez's own negligence contributed to Santana Juarez Gonzalez's harm or death. To succeed on this claim, defendant Jimenez must prove both of the following:

1. That Santana Juarez Gonzalez was negligent; and
2. That Santana Juarez Gonzalez's negligence was a substantial factor in causing the decedent's harm or death.

If defendant Jimenez proves the above, plaintiff Joshua Juarez's damages are reduced by your determination of the percentage of Santana Juarez Gonzalez's responsibility. I will calculate the actual reduction.

**JURY INSTRUCTION NO. 16**

This instruction applies to your consideration of Santana Juarez Gonzalez's conduct only.

Negligence is the failure to use reasonable care to prevent harm to oneself or to others.

A person can be negligent by acting or by failing to act. A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation.

You must decide how a reasonably careful person would have acted in Santana Juarez Gonzalez's situation.

**JURY INSTRUCTION NO. 17**

This instruction only applies to the plaintiff's claims for battery, negligence, and violation of the Bane Act. A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

A person's conduct may combine with another factor to cause harm. If you find that any of defendant Efrain Jimenez's conduct was a substantial factor in causing Santana Juarez Gonzalez's injuries, then defendant Jimenez is responsible for the injuries. Defendant Jimenez cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing Santana Juarez Gonzalez's injuries.

**JURY INSTRUCTION NO. 18**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff on plaintiff's Fourth Amendment claim, you must determine Santana Juarez Gonzalez's damages. You should consider the following as to decedent Santana Juarez Gonzalez's damages:

1. The nature and extent of Santana Juarez Gonzalez's injuries;
2. The loss of life and enjoyment of life; and
3. The mental, physical, and emotional pain and suffering experienced prior to death.

If you find for the plaintiff on plaintiff's state law claims for battery, negligence, or violation of the Bane Act, you must determine plaintiff Joshua Juarez's damages. You should consider the following as to the damages for plaintiff Joshua Juarez:

1. The loss of Santana Juarez Gonzalez's love, companionship, comfort, care, assistance, protection, affection, society, and moral support; and
2. The loss of Santana Juarez Gonzalez's training and guidance.

In determining the plaintiff's damages, do not consider:

1. The plaintiff's grief, sorrow, or mental anguish; or
2. The poverty or wealth of the plaintiff.

The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff and decedent Santana Juarez Gonzalez for any injury you find was caused by the defendant.

It is for you to determine what damages, if any, have been proved. Your award must be based upon evidence and not upon speculation, guesswork, or conjecture.

**JURY INSTRUCTION NO. 19**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and speak for the jury here in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**JURY INSTRUCTION NO. 20**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has

not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

## JURY INSTRUCTION NO. 21

If it becomes necessary during your deliberations to communicate with me, you may send a note through the court clerk, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**JURY INSTRUCTION NO. 22**

Video evidence will be provided to you in electronic form, and you will be able to view it in the jury room. A computer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment to play the video exhibits. If you have questions about how to operate the computer or other equipment, you may send a note to the clerk, signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the clerk present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the video exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data or disk from the jury room, and do not copy any such data.

**JURY INSTRUCTION NO. 23**

A verdict form has been prepared for you. The form contains questions about plaintiff's claims against the defendant. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.